HENRY D. CONE vs. SHELDON E. FOREST.

Berkshire. Sept. 11, 1877. — Jan. 3, 1879. ENDICOTT & LORD, JJ., absent.

Under the Gen. Sts. c. 11, § 54, and c. 12, § 56, a collector of taxes, who, under a warrant committed to him by the assessors of a town, distrains and sells the property of a person for a school-district tax, is not deprived of his justification under the warrant, by reason of the fact that, to the amount of the tax voted, the assessors have added, "for the overlaying on said tax," a sum in excess of the five per cent authorized by the Gen. Sts. c. 11, § 32.

If a collector of taxes, who, under a warrant committed to him by the assessors of a town, has distrained the property of a person for a school-district tax, knowingly sells more of it than is necessary to satisfy the tax and all charges, he is liable in tort to the owner of the property for the excess.

COLT, J. This is an action of tort to recover the value of nine cows alleged to have been converted by the defendant to his own use. The defendant admits that he seized and sold the cows, and justifies his acts under a warrant issued to him, as collector of the town of Great Barrington, by the assessors of that town, directing him to collect a tax voted by one of the school districts of that town. At the trial it appeared by an inspection of the warrant, that to the amount voted by the district, namely $1800.11, was added the sum of $115.16 "for the overlaying on said tax." The plaintiff contended that, as the assessors added to the amount of the tax a sum exceeding five per cent thereof, the assessment was illegal, and the warrant furnished no justification to the defendant.

The statute provides that the assessors "may add to the amount of a tax to be assessed such sum, not exceeding five per cent thereof, as any fractional divisions of the amount may render convenient in the apportionment." Gen. Sts. c. 11, § 32. This provision, substantially, has been in force since the year 1785. Rev. Sts. c. 7, § 28. St. 1785, c. 50, § 11. Prior to that year it had been the common practice of assessors, either to suit their convenience in calculating the apportionment of the tax, or, with a view to meet abatements or defalcations and mistakes, to add to the amount of the tax voted a sum sufficient in their judgment to answer these purposes. Colman v. Anderson, 10 Mass. 105. But this was done without any statute authority; and in order to remove doubts as to the power of the assessors to do

this, and, at the same time, to limit their discretion, the St. of 1785 was passed.

It is clear, that, under the law as it now exists, assessors have no right to add to the amount of the tax voted more than five per cent thereof, and that, if they do so, their assessment, for the amount of the excess, is illegal. It will not be necessary to consider whether this provision of the statute applies equally to school-district taxes; for we are of opinion, that the collector is protected by his warrant, notwithstanding the illegality of the assessment. He is entitled to the benefits which the law affords to ministerial officers in the service of process, issued by courts of competent jurisdiction, and is not bound to examine into the legality of previous proceedings. *Hubbard* v. *Garfield,* 102 Mass. 72. *Underwood* v. *Robinson,* 106 Mass. 296. *Rawson* v. *Spencer,* 113 Mass. 40.

Under the provisions of the Gen. Sts. *c.* 11, § 54, and *c.* 12, § 56, the illegality of this assessment, even if apparent on the face of the warrant, does not operate to defeat the defendant's justification. These provisions were first enacted in the St. of 1859, *c.* 118. That act was probably passed in consequence of the decision in *Goodrich* v. *Lunenburg,* 9 Gray, 38, in which it was held that an error of the assessors, in not assessing one sixth of the state tax upon the polls, vitiated the assessment, and that the plaintiff could recover the whole tax in a suit against the town. Section 4 of the St. of 1859, *c.* 118, provides that "whenever, by any erroneous or illegal assessment or apportionment of taxation, any party is assessed more or less than his due and legal proportion, such tax and assessment shall be void only to the extent of the illegal excess of taxation, whenever such exists; and no party shall recover, in any suit or process based upon such error or illegality, greater damages than the amount of such excess." In the revision of the following year, these provisions were separated, and are found, with slight changes of phraseology, in *cc.* 11 and 12 of the Gen. Sts. cited above; but we see no reason to suppose that the Legislature intended any change of the law.

The defendant is entitled to the protection afforded by these provisions. The excess in the overlaying was, within the meaning of the statutes, an "erroneous or illegal assessment or apportionment," by which the plaintiff was assessed more than his due

proportion. The assessors had jurisdiction of the subject-matter; they acted under the vote of a legally constituted school district; the plaintiff was liable to assessment upon his property for the amount voted; all the proceedings were regular, with the single exception named. The purpose of the St. of 1859 was to prevent the embarrassment and delay in the collection of taxes caused by errors of assessment or apportionment, where, as in *Goodrich* v. *Lunenburg*, the extent of the error, and the amount of the illegal excess, could be ascertained. It is evident also, that, in order to give full force to its provisions, the collector must be protected in the collection of the whole tax assessed. The declaration of the statute, that no sale, contract or levy shall be avoided by reason of any such error or irregularity, implies this, and gives validity to the levy and sale. The collector is not required to correct errors of this description in the assessment. The sale cannot therefore be avoided, either in whole or in part. The plaintiff is left to his remedy against the school district for the illegal excess. The language admits of no other interpretation.

In *Shaw* v. *Becket*, 7 Cush. 442, it was decided that a person, of whom a tax illegally assessed had been collected by distress, could recover of the town only the amount of the tax with interest, and not the surplus value of the property sold, nor the cost of the distress; although in that case there was no remedy against the collector for the value of the property or the expenses incurred, because his warrant was sufficient authority for him; nor against the assessors, because by the statute they are exonerated from all liability, except when acting with want of fidelity and integrity. We adopt the language there used by the court, as equally applicable to this case: " Perhaps this rule will be found not to be so unreasonable in its operation, as may at first be imagined. The levy and sale can only take place after notice of the tax and demand of the payment of the same. The party has always the opportunity, before any expense is incurred, to avoid the same wholly, by payment of the tax. A payment, thus made to a collector clothed with authority to enforce by levy on the person or property, is not a voluntary payment that cannot be recovered back, but at once lays the foundation for an action against the town, a party always solvent and against whom an execution can be always easily satisfied. It is only, therefore, for a party denying the validity of a

tax to pay the same, if demanded by the collector, and payment thereof insisted upon; and having done so, to institute his suit against the town to recover back the same." " It is to be borne in mind, that no such demand can be made for a tax, or necessity exist for paying an illegal one, except where such tax has been assessed by sworn officers of the law, and under all the forms of law."

In *Loud* v. *Charlestown*, 99 Mass. 208, where reference was had to the provision by which assessors are relieved from legal responsibility for an illegal assessment, and to the very provisions we are now considering, it was declared that the Legislature, in limiting and regulating the remedy, had regarded the remedy against the town as adequate and complete, having reference to the necessity of a prompt assessment and collection of taxes for the maintenance of government.

It follows that the defendant in this case committed no trespass in distraining the plaintiff's cattle under an insufficient warrant. The warrant in his hands was valid, notwithstanding the excess in overlaying. If the plaintiff wished to recover his property, and prevent the cost and expense of a sale, he had only to pay his tax to the collector under protest, and recover of the town the illegal excess.

If it be urged that the provisions of the Gen. Sts. *c.* 11, § 53, for the reassessment of taxes which are invalid by reason of any error or irregularity in the assessment, are inconsistent with the construction here given, the answer is, that the provisions of § 53 are all satisfied by applying them to cases where a party is assessed for less than his due proportion, or where the tax is assessed to the wrong person, or upon the wrong estate, and do not imply that there is any necessity for a reassessment of a tax like this, which is more than the due proportion, and which, when paid to the town or district, cannot be wholly recovered back.

The remaining question is whether the defendant became a trespasser by selling more of the property distrained than was necessary to pay the tax and all charges; and if so, to what extent he is to be treated as a trespasser.

If a person refuses or neglects to pay his tax, the collector is required to levy the same by distress or seizure and sale of his goods. The goods are to be kept by him, at the expense of the owner, at least four days, and then sold by public auction, and if

sold for more than the tax, and all charges, the collector is re-quired to return the surplus to the owner upon demand, with an account in writing of the sale and charges. Gen. Sts. *c.* 12, §§ 7, 8, 12. The provisions are minute, but they do not authorize or require the return of any property once taken. The surplus in cash is to be returned on the demand of the tax-payer. The proceedings however in this respect are to be governed by com-mon-law rules, which control the right to distrain goods for rent or taxes. Blackstone says that goods distrained are for a time only a pledge in the hands of the distrainors, which they are bound, by an implied contract in law, to restore to the owner, on payment of the debt and expenses, before the time of sale; or, when sold, to render back the overplus. 2 Bl. Com. 452. It is well settled that an officer is answerable in trover for property sold on execution, after he has realized money sufficient to satisfy his writ. *Stead* v. *Gascoigne,* 8 Taunt. 527. *Batchelor* v. *Vyse,* 4 Mo. & Sc. 552. *Aldred* v. *Constable,* 6 Q. B. 370. *Seekins* v. *Goodale,* 61 Maine, 400. *Wolcott* v. *Root,* 2 Allen, 194.

It appears, from the report in this case, that the cows here distrained were sold separately, for the prices specified in the defendant's return; and that the sale of the first seven produced a sum sufficient to pay the full amount of the tax, cost of dis-traint, and the defendant's fees, and that this was known to the defendant at the time. It was the duty of the defendant there-upon to return, or to offer to return, the remaining cows. His act in proceeding to sell the same was a wrongful conversion of the property, for which he is liable in this action, but which does not render him a trespasser *ab initio. Seekins* v. *Goodale,* above cited.

Judgment must therefore be rendered in favor of the plaintiff for the value of the two cows as found by the jury.

*J. Dewey,* for the defendant.

*M. Wilcox & J. M. Barker,* for the plaintiff.