MASON S. SOUTHWORTH *vs.* RODNEY EDMANDS & others.

Middlesex.   January 9, 1890. — September 5, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Tax Sale — Married Woman's Real Estate — Presumption of Husband's Possession — Affidavit of Notice.*

If a husband and wife with their children live together on the wife's real estate, the presumption is that the husband is in possession as head of the family and as her licensee; and the taxes thereon are properly assessed to him under the Pub. Sts. c 11, § 13, which provide for the assessment of taxes to the owner or person in possession of real estate.   C. ALLEN & KNOWLTON, JJ., dissenting.

In a writ of entry to recover a parcel of land owned by a married woman and occupied by her husband with herself and their children, the husband's possession is asserted by making him a tenant in the action, and is admitted by his plea of *nul disseisin* merely.

The Gen. Sts. c. 12, § 32, providing that the affidavit of a disinterested person should be evidence of notice of the sale of land for non-payment of taxes, did not require such affidavit to be filed nor exclude proof of such notice by other evidence; and if such notice was in fact given, it is immaterial if the affidavit was insufficient.

Under the Gen. Sts. c. 12, § 33, it was optional for the collector to sell the whole

or a part of land for taxes, and a sale was not invalid if he sold the whole when a part might conveniently have been sold.

Under the Gen Sts. c. 12, § 56, by which tax sales of land were not to be void because of error or illegality in the assessment, a sale was not invalid because the taxes were in part appropriated by the town to a purpose for which it could not lawfully raise money.

A tax sale of land is not rendered invalid because the collector announced at the sale that he hoped that no person would bid more than the amount of the taxes, interest, and charges, because of the difficulty of disposing of the surplus.

WRIT OF ENTRY to recover a parcel of land in Wakefield. The tenants Rodney Edmands and Josephine A. Edmands, his wife, severally pleaded *nul disseisin.* The remaining tenant disclaimed title to the premises. The case was referred to the Superior Court, upon the report of an auditor as an agreed statement of facts, and, after judgment for the tenants, to this court on appeal. The report was in substance as follows.

The parcel in question consisted of two and a half acres of land, upon which were two dwelling-houses and a barn. The demandant claimed title under four deeds from the collector of taxes of that town, duly given by him in pursuance of sales of the land for the non-payment of taxes assessed to Edmands for the years 1873, 1874, 1875, and 1876. Edmands owned the premises from 1854 to 1861; but in March, 1861, a mortgage thereon executed by him was foreclosed, and the premises were duly conveyed to one Strong. The record title to the premises stood in the name of Strong from March, 1861, to March, 1882, and the taxes thereon were assessed to him, and paid by him, for some years prior to 1869. The premises were purchased of Strong about the year 1864, and afterwards, by deed dated March 31, 1869, and delivered about the same time, were conveyed to Mrs. Edmands, but the deed was not recorded until March 1, 1882. For some years before March, 1869, and since that time, Edmands and his wife have occupied the premises, using one of the houses for a dwelling and letting the other. They have four children, all of whom are minors and reside with them on the premises. From and after the purchase from Strong, the taxes on the premises were assessed to Edmands, and he paid the same up to and including the year 1872. The taxes were never assessed to Mrs. Edmands, nor was any demand for their payment ever made upon her. The

assessors in each year in question posted notices requiring the inhabitants of the town to bring in their polls for assessment, but Mrs. Edmands never requested the assessors to assess them to her, or gave them any notice that she was the owner of the premises. The assessors had the means of knowing in whom the title stood, and might have ascertained that fact by inquiring of Strong.

The collector in each of these years sold the whole of the premises upon due proceedings had by him, and duly filed and recorded in the registry of deeds the affidavit of the posting and publishing of the notices of the sale by one Eaton, who acted as the collector's attorney in all matters pertaining to the sales; and the notices were in fact given as stated in each affidavit, and the auditor found that Eaton was a disinterested person at the time he made each affidavit.

The premises were crossed by a private way, and could have been conveniently divided for the purposes of sale. Either dwelling-house or a part of the land could have been sold in either year for an amount sufficient to discharge the taxes, interest, and charges, but the collector each year sold the whole of the premises, stating in each deed that it was his opinion that the "land could not be conveniently divided, and a part thereof set off, without injury to the residue, and judging it to be most for the public interest to sell the whole of said land."

The town had purchased a piece of land containing about five acres, to enlarge a park of which it became the owner before 1873, and in each of the years in question there was included in the annual appropriation of the town a sum to pay the interest on the debt incurred by the town in making this purchase, and this sum was included in the warrant for the collection of the taxes of each year.

The collector each year announced to those persons at the sale that he hoped no person would bid a larger amount for the property than the amount or the taxes, interest, and intervening charges, on account of the inconvenience of disposing of the surplus; but there was no refusal to entertain bids made at the sales.

The case was argued at the bar in January, 1890, and afterwards was submitted on the briefs to all the judges.

*S. K. Hamilton*, for the demandant.

*G. M. Hobbs*, for the tenants.

W. ALLEN, J. The taxes were properly assessed to Rodney Edmands. The record title was in one William G. Strong, and he was the person taxable as owner, and not Mrs. Edmands, who held an unrecorded deed from him, of which the assessors had no notice. Gen. Sts. c. 11, § 8. *Forster* v. *Forster*, 129 Mass. 559, 566. St. 1881, c. 304, § 3. Pub. Sts. c. 11, § 13. The potent facts upon which the assessments must be made were, that Strong was the owner of the premises, and that the Edmands family occupied them ; and there was nothing to overthrow the presumption that the head of the family was in possession.

The tax could not properly have been assessed to Mrs. Edmands as the person in possession. Even if the deed to her had been recorded, and she was taxable as owner, Edmands would still, upon the facts found, have been taxable as in possession. It appears that Edmands and his wife occupied the premises, and with their minor children resided on the place. There is nothing to show that he, as the head of the family, was not in possession of the family home. The fact that the wife owned the place would not afford an inference that she had taken her husband's place in the family. Undoubtedly she would have the right to take and retain possession, even if it were necessary therefor to compel her husband to furnish another home for her. But if she permitted her estate to be occupied as the family home, the presumption, in the absence of evidence to the contrary, is that she permitted the possession of it to be in her husband. Her consent that her husband should be in possession would be presumed. He would not be her tenant, but would be in by her license. *Plaisted* v. *Hair*, 150 Mass. 275. He was under legal obligation to provide a home for his family. She was under no legal obligation to allow him to use her estate for that purpose. She might have refused it to him ; perhaps she might, as a condition of admitting him to it, have exacted his consent that she should be the master of the house. Perhaps she could, by an antenuptial contract, have settled the possession of the house upon herself, after the pattern of the plaintiff in *McIntyre* v. *Knowlton*, 6 Allen, 565, who married her

hired man under an agreement that he was to have his board and lodging and a home with her, and nothing more. But no such relation between husband and wife will be presumed. If nothing appears but that the husband and wife and children occupy a house owned by the wife, the inference will be that the husband is the person in possession of it, and that he is what his name imports, master of the house.

At the time of this occupancy, the wife could not have conveyed her real estate, or let it for a longer term than one year, without the concurrence of her husband. Gen. Sts. c. 108, § 3. St. 1874, c. 184, § 1. If she used her property for carrying on a boarding-house, or a farm, the property employed in the business would be conclusively presumed to be her husband's, as against her creditors, unless a certificate that it was her business had been filed. St. 1862, c. 198. *Snow* v. *Sheldon,* 126 Mass. 332. Like his children, she took and followed the settlement of her husband. Gen. Sts. c. 69, § 1. We cannot follow the decision in *Hamilton* v. *Fond du Lac,* 25 Wis. 496, nor adopt the doctrine there laid down, that "The husband, merely residing with his wife upon her separate property, is no more the occupant of the property, within the meaning of the statute allowing lands to be assessed to occupants, than she would be of his lands if residing with him thereon."

The circumstances of the occupancy stated in the report, meagre as they are, show that the actual possession was in the husband. Before March, 1861, he was the owner. In that year the record title passed by the foreclosure of a mortgage to Strong, and it remained in him until 1882. In 1869, Strong gave the deed to Mrs. Edmands, which was recorded in 1882. The taxes were assessed to Strong, and paid by him until 1864; since then they have been assessed to Edmands, and were paid by him until the tax for 1873, for which the first sale was made. It does not appear how long Edmands had lived upon the place, only that he had lived there for some years prior to 1869. It is said the place was "purchased of Strong" about 1864, although the deed was not given until 1869. The inference is that Edmands has occupied the place continually since 1864, if not from before the foreclosure of the mortgage, and has lived there with Mrs. Edmands at least since 1864. Neither

Edmands nor his wife ever objected to the taxes being assessed to him, or claimed in any way that they should be assessed to her. It must be assumed that both of them knew to whom the taxes were assessed. In the instances, probably common throughout the Commonwealth, in which the real estate of the wife is assessed to the husband, there can hardly be found one which would not furnish more plausible ground than this for holding the tax to be illegal and void. In 1873 the assessors found Edmands occupying the place with his family ; he had so occupied it for nine years or more, and during that time the taxes had been assessed to him, and paid without objection. They were not bound to look further. If they had notice from the record that Strong was the owner, they were not bound to inquire if there was not an unrecorded deed from him to Mrs. Edmands ; and if they had had notice of such a deed, they may well have doubted whether they could have assessed the tax to her as owner, while the right to assess to the occupant in possession was clear. It has not been argued that the taxes could have been assessed to Mrs. Edmands, except as owner, or that they could have been assessed to any one as in possession, unless to Edmands.

The demandant asserts Edmands's possession by making him a tenant in the action, and he admits that he is in possession by pleading the general issue without a specification of disclaimer.

It is objected that the affidavits of notice of the sales provided for by the Gen. Sts. c. 12, § 32, were insufficient, because the attorney of the collector by whom they were made was not a disinterested person. The statute does not require that an affidavit should be filed ; it only makes a proper affidavit evidence that notice was given, but does not exclude proof by other evidence. As it is found that notice was in fact given, it is immaterial if the affidavit is insufficient.

It is further objected, that the sales were void because the collector sold the whole of the land when a part might conveniently have been sold. But it was optional with the collector to sell the whole or a part. Gen. Sts. c. 12, § 33. *Crowell* v. *Goodwin,* 3 Allen, 535.

It is also objected, that the sales were illegal because there was included in each annual appropriation a sum of money to

pay interest on a debt contracted for the purchase of land for a public park, it being contended that the town could not lawfully raise money for that purpose. If this were so, it would not avoid the sale. Gen. Sts. c. 12, § 56. *Cone* v. *Forest,* 126 Mass. 97.

It is further objected, that the sales are void because the collector at each sale announced that he hoped that no person would bid more than the amount of taxes, interest, and charges, on account of the inconvenience of disposing of the surplus. There is no reason to suppose that this remark did in fact influence the bidding, or was calculated so to do. It was apparently intended only for the class of bidders who meant to advance about the amount due, and to hold the land for redemption, when they would recover back their advance, and ten per cent interest upon it, and it might have influenced such a bidder to offer the exact amount due, instead of a round sum that would cover it; but that would be no detriment to the owner. It could not have influenced any bid made with the intention of purchasing and holding the property. It is better for the owner, if he redeems the property, that the sale should be for no more than the amount due, for when he redeems he will have to repay the surplus with interest at the rate of ten per cent per annum; and this seems to have been the opinion of the Legislature, for before the last sale the collector was authorized to take the land for the town for the amount due. St. 1878, c. 266.

No other objection is made to the validity of the tax sales, and in the opinion of a majority of the court there must be

*Judgment for the demandant.*

KNOWLTON, J. I do not agree to that part of the opinion of the majority of the court which seems to hold that, when a man and his wife live together on her real estate, the possession is deemed to be in the husband, and not in the wife. There can be no doubt that when two men, or two women, or a man and a woman who are not married to each other, are residing in a house owned by one of them, and nothing else appears, the owner is held to be in possession, and the other to be there in the owner's right. By the Pub. Sts. c. 147, § 1, it is provided that " the real and personal property of a woman shall upon her

marriage remain her separate property, and a married woman
may receive, receipt for, hold, manage, and dispose of property,
real and personal, in the same manner as if she were sole, except
that she shall not without the written consent of her husband
destroy or impair his tenancy by the curtesy in her real estate."
Under this section, except as to her husband's right by the
curtesy and the making of contracts with her husband, a mar-
ried woman stands in precisely the same position in regard to
her real estate as if she were a man.    Pub. Sts. c. 147, § 2.
The statute has abolished all rights which the husband once had
in his wife's property, and has swept away all presumptions
against her possession and control growing out of the marriage
relation.    In the ownership of her property, with the two excep-
tions above stated, and in all the rights, duties, benefits, and pre-
sumptions which the law attaches to the ownership of property,
a wife is as if she had never married.    The law assumes that
she and her husband will live together.    Where is the provision
that, if they live on her real estate, the express words of the
statute giving her control of her property shall immediately
lose their effect?

It is true that in some particulars the common law in regard
to the domestic relations remains unchanged.    It is still the
legal duty of the husband and father to support his wife and
children.    He is still the head of the family, and as such has
certain rights of control.    He is entitled to the custody of his
minor children, unless the court for good reasons sees fit to give
it to his wife, or to a guardian.    Pub. Sts. c. 139, § 4; c. 146,
§§ 29, 30; c. 147, §§ 33, 36.    St. 1887, c. 332, § 2.    How far
he can enforce any right of control of the person of his wife
under recent statutes and decisions is doubtful.    But the prin-
ciple of the common law, that a wife is presumed to act under
the coercion of her husband, may be invoked in her favor and
against him when she is charged with a crime committed in his
presence; and this principle will apply in a criminal case, when
her conduct in which she is presumed to have been coerced takes
effect upon her property, and constitutes a criminal use of the
property.    *Commonwealth* v. *Wood*, 97 Mass. 225.    *Common-
wealth* v. *Hill*, 145 Mass. 305.    This principle, however, is quite
distinct from that which determines the legal possession and

right of control ordinarily pertaining to the ownership of property. The husband is under no liability as an owner or possessor of his wife's estate. He is under such liability only as results from the fact that, as head of the family, he is supposed to influence the conduct of his wife, and to be responsible for her acts done in his presence, and with his knowledge and consent. Her conduct may give a character to the house in which they live, and render it a common nuisance, and he may be so responsible for her conduct that her act becomes his, and makes him punishable as keeper of a nuisance, although the ownership and the legal possession of the real estate viewed as property are all the time in her. If a married woman should file a certificate that she was carrying on the business of selling intoxicating liquor on her separate account, and obtain a license, and buy the necessary property, and conduct the business as her own, her husband would be liable for any unlawful sales made by her in his presence, unless it appeared that they were made without his consent. Would it therefore be held that he was in possession of the utensils used in the business, so that he could maintain trover against a wrongdoer who should carry them away? Manifestly not. Neither could he properly be deemed to be in possession of real estate owned by her, so that he could maintain trespass for an injury to it, or take the rents and profits, merely because he might be liable criminally for her act of keeping it as a common nuisance. In *Commonwealth* v. *Hill, ubi supra,* which is the most recent case in this Commonwealth in regard to the criminal liability of a husband for a wife's act, it seems to be assumed that the legal possession of the real estate was in the wife as owner, and the decision is made to turn on the question whether the husband consented to her criminal conduct, so as to make him liable for it under the principles of the common law above referred to.

The only ground on which it is argued that this statute should be deprived of its effect is the existence of these principles. But the common law must yield to the statutes whenever they come in conflict; and the principles which are still operative are not at variance with this statute. The fact that a husband ought to provide a home for his wife does not tend to show that a wife ought to lose her possession of her prop-

erty if she allows it to be occupied as a home for the family. She ought not to lose, nor he to gain, because of his neglect of duty.

A husband's right of control as head of the family relates only to the conduct of the family, and gives him no possession of their property. If his minor children have property, their guardian alone can manage it. If his wife has property, she can do with it as she chooses, so long as she violates no law. His right to control her conduct, whatever in other respects that right may be, is expressly limited by the statute, which gives her the control of her property for any lawful use, and precludes him from interfering with her possession.

The Gen. Sts. c. 108, § 1, provided that not only a wife's property, but the "rents, issues, profits, and proceeds of all such property, shall . . . remain her sole and separate property, and may be used, collected, and invested by her in her own name, and shall not be subject to the interference or control of her husband, or liable for his debts." While these words are not retained in chapter 147 of the Public Statutes, their meaning is there. There is nothing in the language of the statute limiting the prohibition of interference by the husband to property not occupied as the home of the family. Under this language, how can it be held that, if a wife goes to live on her farm with her husband, the possession thereby passes to him and he becomes entitled to the income of the property? In my opinion, so to hold would nullify the statute, and greatly disturb the harmony of our decisions.

No doubt a married woman may give up the possession of her real estate to her husband, notwithstanding that she can make no binding contract with him. But in cases where a husband and wife have lived together on her property, she has been treated as in possession, and has often been held liable for acts done by him as her managing agent. *Snow* v. *Sheldon*, 126 Mass. 332. *Arnold* v. *Spurr*, 130 Mass. 347, 349. *Wheaton* v. *Trimble*, 145 Mass. 345. *Jefferds* v. *Alvard*, 151 Mass. 94.

In *Plaisted* v. *Hair*, 150 Mass. 275, it was found that the wife owned the farm, and that she lived on it with her husband, who, by her "consent, was carrying on said farm in his own name, on his own account, and for his own benefit." It was held that he

was a licensee of his wife, and that hay raised and appropriated by him before the license was revoked was his property. But the opinion plainly implies that this was because he was managing the farm as his own by her express consent, and that she could have revoked the license at any time, and it nowhere intimates that he would acquire any possession merely because she permitted the farm to be occupied as their home.

In *McIntyre* v. *Knowlton*, 6 Allen, 565, where a husband and his wife lived together on her land, it seems to have been assumed by the court that the possession was in her, and the question discussed was whether the hay raised on the land became his because he had done work in raising and curing it, and it was held that it did not.

By the Pub. Sts. c. 11, § 13, real estate is to be assessed " to the person who is either the owner or in possession thereof on the first day of May." The statute declares what shall constitute ownership within the meaning of this section, and substantially adopts the provision of the Pub. Sts. c. 120, § 4, that an unrecorded deed shall not be valid against third parties who have had no notice of it. To be subject to taxation for real estate, one must have such ownership, or must be in actual possession. He cannot be taxed on mere appearances which do not accord with the facts. The word "possession" is used in this statute in its ordinary sense. *Lynde* v. *Brown*, 143 Mass. 337. The fact for which it stands is fraught with important possible consequences. Not only may a lien upon the real estate be founded on this possession, but by reason of the possession a debt may be created, collection of which is enforceable against the person and property of him to whom the tax is assessed. *Richardson* v. *Boston*, 148 Mass. 508. Possession which will warrant taxation under this section will entitle the possessor to the income and profits of the property, and will enable him to maintain an action for a trespass.

There is no reason for any other than a natural construction of this statute. There is no practical difficulty in assessing taxes on real estate under it. The assessors may always safely assess to the person who appears of record as owner, or to the person in actual possession. If with reasonable diligence they cannot ascertain the owner or possessor, they may tax it as the property

of an unknown proprietor.   *Desmond* v. *Babbitt*, 117 Mass. 233. If for any reason they make a mistake, there is still an ample and easy remedy; for the invalid assessment does not affect the validity of the remainder of the tax, and the erroneous tax may afterwards be reassessed by the assessors for the time being, as it should have been assessed originally.    Pub. Sts. c. 11, §§ 79, 84.

Under a similar statute in Wisconsin, the Supreme Court of that State unanimously held that a man living with his wife on her real estate, under circumstances like those in the present case, was not liable to taxation as an occupant of the property. *Hamilton* v. *Fond du Lac*, 25 Wis. 496.

I am authorized to say that Mr. Justice Charles Allen concurs in this opinion.