(4 App. Div. 532)

DENTON v. CARROLL.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

1. WITNESS—CREDIBILITY—PARTIES.

On an issue as to whether goods sold by defendant under a tax warrant against B. were her property or in her possession, whereby they could be sold for her taxes (1 Rev. St. p. 397, § 2), it appeared that the goods were part of the furniture of a house owned and occupied by plaintiff, and were taken from rooms of which plaintiff was in actual control at the time of seizure. Plaintiff testified that she owned the goods, and that B., though she boarded in the house, never used or controlled the rooms from which the furniture was taken. Defendant testified that he had seen B. in the parlor of the house, which was the room from which the furniture was taken. Other witnesses testified that B. occupied a part of the house, but none of them testified that she occupied the parlor. Held, that plaintiff's testimony was corroborated by the other evidence in the case, and therefore could not be disregarded under the rule that the uncorroborated and uncontradicted testimony of a party to an action may be disregarded.

2. TAX WARRANT—SALE—GOODS IN POSSESSION OF TAXPAYER.

A boarder in a house is not in possession of the furniture in the room occupied by him (1 Rev. St. p. 397, § 2), so as to authorize the seizure thereof for his taxes.

3. SAME—EXCESSIVE SALE.

An officer who continues to sell goods seized under tax warrant after realizing enough to pay the amount due is a trespasser.

Appeal from Wyoming county court.

Action by Lillian B. Denton against William Carroll. From a judgment affirming a judgment rendered by a justice of the peace in favor of defendant, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Eugene M. Bartlett, for appellant.
G. S. Van Gorder, for respondent.

FOLLETT, J. August 2, 1894, this action was begun in a justice's court, and upon the trial a verdict of no cause of action was rendered. It is alleged in the complaint that the plaintiff was the owner of an ingrain carpet, a rag carpet, and a washstand, which the defendant, July 23, 1894, wrongfully took from the plaintiff's possession, and sold July 30, 1894. The defendant, in his answer, denies all of the allegations in the complaint, and alleges that he was the collector of taxes in school district No. 4 in the town of Genesee Falls, and that he levied upon and sold the property described in the complaint by virtue of a tax warrant issued to him for the collection of a tax duly assessed against Olive Bigelow, who was the owner of or in the possession of such property.

It is conceded that the defendant was the collector of school district No. 4; that in April, 1894, he received a tax warrant commanding him to collect of Olive Bigelow a tax of $2.96; and that, by virtue of the warrant, he took, July 23, 1894, from the plaintiff's house, against her protest, the articles described in the complaint,

and July 30, 1894, sold them at public auction. He sold—First, the ingrain carpet, for $7; second, the rag carpet, for $1.50; and, third, the washstand, for 65 cents. The tax and the defendant's fees amounted to $3.31. He was asked on the trial why he sold the rag carpet and washstand after having sold the ingrain carpet for more than sufficient to satisfy his claim. He answered: "I thought if a man advertised property for sale he was obliged to sell it all." After satisfying the tax and his fees, there was left in his hands $5.84, which he told the persons at the sale would be left with Mr. Beardslee, and it was so left with him for a time, but was afterwards withdrawn and deposited with the supervisor of the town of Genesee Falls.

The defendant attempted to justify his seizure and sale of the property on two grounds: (1) That Olive Bigelow was the owner of it; (2) that she was in the possession of it, within the meaning of 1 Rev. St. p. 397, § 2, of which the following is a copy:

"Sec. 2. In case any person shall refuse or neglect to pay the tax imposed on him, the collector shall levy the same by distress and sale of the goods and chattels of the person who ought to pay the same, or of any goods and chattels in his possession, wheresoever the same may be found, within the district of the collector; and no claim of property to be made thereto by any other person, shall be available to prevent a sale."

It is conceded that the property seized and sold was part of the furniture of a house owned and occupied by the plaintiff and her husband, and was taken from rooms of which the plaintiff was in actual control when it was seized. The plaintiff testified that she owned the property, and that, though Mrs. Bigelow occupied a sleeping room in the house, and boarded in the family, the rooms from which the furniture was taken had never been used or controlled by Mrs. Bigelow. To overthrow this positive testimony, and to justify his seizure, the defendant testified that in May, 1894, he saw Mrs. Bigelow in the parlor. A former servant of the plaintiff, called by the defendant, testified: "Was employed there [in plaintiff's house] as a domestic 2½ years ago. Mrs. Bigelow occupied the north part of the house then." This witness did not testify that Mrs. Bigelow ever occupied the parlor and bedroom from which the goods were taken, nor does she describe the rooms in the north part which were occupied by her. Another witness testified that he had "seen Mrs. Bigelow at the Denton house, in the rooms on the north side of the house"; but he does not specify the rooms, nor does he testify when and under what circumstances he saw her in rooms on the north side of the house. This evidence, given by these three witnesses, is absolutely the only testimony given in behalf of the defendant to establish the fact that Olive Bigelow was the owner of, or ever was in possession of, the goods taken and sold.

Upon this evidence the jury found for the defendant, and it is now urged that the verdict should be sustained, on the ground that the only evidence of the plaintiff's ownership and possession was given by her, and that the jury had the right to disbelieve it. Her testimony is not the only evidence of her title and possession, for every witness who was sworn in behalf of the defendant testified

that these articles of furniture were in the plaintiff's dwelling, and were there devoted to the uses for which they were designed. The defendant established the plaintiff's actual possession, from which fact, unexplained, title may be inferred.

It has been often held that the credibility of the uncontradicted testimony of a party is a question for the jury. So is the credibility of every witness, interested or disinterested; but a jury is not at liberty to disregard the evidence of any witness who is in nowise impeached, and whose testimony is such that its truth is highly probable. Elwood v. Telegraph Co., 45 N. Y. 549; Cunningham v. Gans, 79 Hun, 434, 29 N. Y. Supp. 979. In some of the cases it is said that a jury is at liberty to disregard the testimony of a party to the action, or the testimony of an interested witness. This rule, expressed in this absolute form, is a survival of the theory of the common law, that persons interested in the event of an action, whether parties or not, were so likely to commit perjury that they could not be sworn as witnesses. In 1848 persons interested in the result of actions, and in 1857 parties to actions, were by the Code of this state authorized to testify in such actions. The courts regarded this change with great disfavor, and the rule that the undisputed evidence of a party to an action, or of a person interested therein, might be disbelieved by a jury, was often charged, and is declared in several reported cases without qualification, and without much regard to whether there were or were not facts or circumstances which tended to discredit the witness. But when time and experience demonstrated the wisdom of the change, which had been made in England some years earlier (6 & 7 Vict. c. 85; 14 & 15 Vict. c. 99), the rule began to be qualified, and the tendency of the later cases seems to be that a jury is not authorized to disbelieve the uncontradicted evidence of a party, or of an interested witness, simply because he is a party or is interested therein. The rule, as first laid down, has been stated in some recent decisions; but an examination of the cases shows that there was, in those cases, more than the mere fact that the witness was a party or interested. There were facts and circumstances surrounding the cases which authorized the inference that the witness was or might be unreliable. The true rule is declared in Kelly v. Burroughs, 102 N. Y. 95, 6 N. E. 109, where it is held:

"The mere fact that the plaintiff, who testified to important particulars, was interested, was unimportant, in view of the fact that there was no conflict in the evidence, or any thing or circumstance from which an inference against the fact testified to by him could be drawn. The cases cited by the appellant lack this element, while Lomer v. Meeker, 25 N. Y. 361, sustains the ruling of the trial court."

In that case a verdict was directed for the plaintiff upon his uncorroborated evidence, though the defendant asked to have the testimony submitted to the jury. Every circumstance in this case tends, not to discredit, but to corroborate, the testimony of the plaintiff. She owned and was in possession of the dwelling. The articles seized were a part of its furniture, and she had actual and undisputed possession of the rooms and of the articles which were

taken, and, when taken, she was exercising dominion over them and over the rooms in which they were, and she then asserted her title and possession. It was shown that the tax debtor had been seen two or three times in the parlor, from the floor of which the ingrain carpet was taken, and she undoubtedly had been in that room many times; but this fact did not establish her title to or possession of that carpet. It was not shown that the tax debtor had ever used the rag carpet or the washstand, or that she had ever seen them, though it may be that she had seen and used them many times. The circumstances shown were insufficient to establish title or possession in the tax debtor, or to authorize the jury to discredit the plaintiff's uncontradicted testimony that she was the owner and in possession of the property. The position that such possession as a boarder in a house or hotel has of the furniture in the room occupied by him authorizes a collector to seize it for a tax assessed against him cannot be supported. Railway Co. v. Roach, 80 N. Y. 339; Hersee v. Porter, 100 N. Y. 403, 3 N. E. 338; Stockwell v. Veitch, 38 Barb. 650, 15 Abb. Prac. 412.

. But, if it be assumed that the goods were liable to be taken for the taxes assessed against Olive Bigelow, on the theory that she was in possession, the defendant is liable to this plaintiff for making an excessive sale. Under the evidence of the defendant, the possession and title of the plaintiff were sufficient to authorize the plaintiff to maintain an action against a person converting the goods or any part of them. Collectors of school districts are commanded to enforce their warrants in the same manner that collectors of town and county taxes enforce warrants issued by boards of supervisors (Laws 1894, c. 556, § 78); and, in case they levy and sell, they may charge 5 per cent. on the amount collected and traveling fees at the rate of 10 cents per mile, to be computed from the schoolhouse in the district (Id. § 81). This chapter did not take effect until June 30, 1894 (after this warrant was issued, but before it was enforced). However, the powers and fees of collectors were the same under the statutes in existence in April, May, and June, 1894. Laws 1864, c. 555, § 81; Id. § 84, as amended by section 1, c. 526, Laws 1890. Officers, when proceeding under executions or tax warrants, are generally liable for excessive levies, and are always liable for excessive sales. When several chattels are seized, and enough have been sold to satisfy the demand, the sale of the remainder is a trespass, and the officer becomes liable. Cone v. Forest, 126 Mass. 97; Cooley, Tax'n (2d Ed.) 496, 802; 2 Desty, Tax'n, 868; Burroughs, Tax'n, p. 260, § 106; Freem. Ex'ns, § 302. In the case cited the collector of a school district tax levied upon nine cows, sold seven for a sum sufficient to satisfy the tax and all charges, and then sold the other two cows. It was held that he was guilty of converting the two cows last sold, and liable for their value. This rule is elementary, is as old as the Six Carpenters' Case, 8 Coke, 146, and is supported by many decisions cited in the text-books above cited. The defendant had no right, after selling the first article for more than twice enough to pay the tax and his charges, to sell the other articles.

The judgment of the county court and the judgment of the justice's court should be reversed, with costs. All concur.

WARD, J., concurred in result, upon the last ground stated in the opinion.