(27 Misc. Rep. 302.)

## STRONG v. WALTON.

(Franklin County Court. April, 1899.)

1. TAXATION—EXEMPTIONS—PENSIONS.
    Code Civ. Proc. § 1393, exempts the pension of a soldier from assessment, levy, or sale for collection of taxes or for any other purpose. The amendment of 1897 rendered the real estate which had theretofore been exempt from levy and assessment subject to assessments for school and highway purposes. *Held,* that the amendment did not make personalty purchased with pension money liable to be seized and sold for the payment of a school tax levied on real estate owned by the pensioner.

2. NEW TRIAL—UNCONTRADICTED EVIDENCE—VERDICT
    Where the evidence given by plaintiff is uncontradicted and unimpeached, and it is not improbable, it cannot be disregarded by the jury, and a verdict for defendant will be set aside.

3. SAME—COUNTY COURT—JUDGMENT.
    The county court should reverse the judgment of a justice, entered on a verdict of a jury, where there is no conflict of evidence, and the verdict is contrary to clear, undisputed, and unimpeached testimony, and grant a new trial.

Appeal from justice court.

Action by John A. Strong against Christopher Walton to recover coal levied on by the tax collector for an unpaid school tax. From a judgment for defendant, plaintiff appeals. Reversed.

N. H. Munsill, for appellant.

Thomas Cantwell, for respondent.

BEMAN, J. The plaintiff had been a soldier in the army of the United States in the war of the Rebellion. He had received an honorable discharge from such service, and was the recipient of a pension from the general government of $12 per month, the proceeds of which had been used by him in the purchase of the real estate upon which he resided, with his family, in the town of Harrietstown; that an assessment for taxes had been made upon said premises for the purpose of raising funds for the support and maintenance of the common schools of the school district in which he resided. The respondent was the collector of taxes in and for said school district, and, armed with a legal warrant for the collection of the tax assessed against said premises, after the refusal of payment thereof by the appellant, levied upon and sold one ton of coal found upon said premises. The appellant claims, and it appears by the evidence in the case, that the collector was informed by the appellant that the assessment upon the real estate was improper and illegal, and that he had no legal right or authority under the tax warrant to levy upon or sell the coal in question, because of the fact that such property was purchased entirely with money received from the general government as pension. Upon the trial of the cause before the magistrate there were but two issues involved: First, the legality of the assessment; and, second, the right of the collector to sell the coal in satisfaction of the tax. It was proven beyond any question, by the evidence of the plaintiff, that the coal in question was purchased entirely with proceeds of his pension. The only evidence, however, given upon that point was the testimony of the plaintiff himself, but there was no contradiction of the fact, and it stands upon the record proven that the coal was purchased in the manner stated. The defendant claims that it was the right and prerogative of the jury to disregard the testimony of the plaintiff, and to find from the entire evidence in the case, notwithstanding there was no contradiction of the appellant's testimony, that the coal was not purchased with the proceeds of pension, and hence was liable to be sold for the tax, and that the collector was exonerated in levying upon and selling it in satisfaction of the same. There can be no question at this present time as to the exemption of the coal from levy and sale for taxes, or for any other purpose. The statutes of the United States make the pension granted to a soldier exempt from levy and sale upon execution or for taxes while the same is in his hands, or while in transit from the pension office to him. Section 4747 of the United States Revised Statutes contains the following words:

"No sum of money due or to become due to any pensioner shall be liable to attachment, levy or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

By the provision of section 1393 of the Code of Civil Procedure, before the amendments of 1897, the pay, bounty, or pension of an officer or soldier of the United States government are exempted from assessment, levy, or sale for the collection of taxes, or for any other purpose. The warrant for the collection of taxes in this instance was

issued by the trustees of the said school district for the collection of a school tax, which, by the amendment of section 1393, enacted in 1897, rendered the real estate which had theretofore been exempt from levy and assessment subject to all and every assessment necessary for school and highway purposes. Hence the contention of the respondent upon the trial before the magistrate, that an assessment upon property exempt for general purposes was not exempt from assessment for the purposes of raising money for the support of the common schools, was properly maintained; but the amendments to said section of 1897 do not undertake to make property purchased with pension money, and seized for the payment of a tax, although properly levied as aforesaid, liable for the payment of tax, and subject to seizure and sale by the collector. There is no provision of law, either by the United States statutes or in the amendments to the Code referred to, that subjects personal property purchased with the proceeds of pension money to the payment of any tax which may be assessed upon any property held and owned by a pensioner. The courts, in discussing section 1393, Code Civ. Proc., and the amendments thereto, have clearly settled the construction to be placed upon them. There is no distinction to be made between selling property purchased with pension money under an execution and seizing it for nonpayment of taxes. In neither instance can such property be lawfully seized and sold, except that real property purchased with pension money is subject to assessment, seizure, and sale for local school purposes, and for the construction and maintenance of streets and highways, as provided by chapter 347, Laws 1897, and section 1393, Code Civ. Proc.; but under the statutory law of the United States, above cited, the pension, and the proceeds thereof, consisting either of real or personal property, are wholly exempt from seizure or sale for taxes or any other purpose. This determination is fully discussed and well settled in Bank v. Carpenter, 119 N. Y. 550, 23 N. E. 1108, in which Judge Ruger, delivering the opinion of the court, says: "The plain purpose of the act (section 1393, Code Civ. Proc.) was to promote the comfort of the soldier; to secure to him the bounty of the government, free from the claims of creditors; and to insure him and his family a safe, although modest, maintenance, so long as their needs required it." The subject has been considered, and this determination followed and adhered to, in many decisions since the last cited. It is unnecessary, however, in considering the questions involved in this case, to cite others. I will, however, direct attention to a very recent case, Buffum v. Forster, reported in 77 Hun, 27, 28 N. Y. Supp. 285, where Judge Haight, writing the opinion, says: "It must now be regarded as settled that not only pension money, but also property purchased by the pensioner with such money, which is necessary or convenient for the support and maintenance * * *, is exempt."

The only need of further discussion of the remaining question involved is for the court to say that the rule has been well established that, where there is no conflict in the evidence, and the witness giving the evidence stands unimpeached, uncontradicted, and there being no improbability in the statement under oath, neither a court nor a

jury can arbitrarily disregard his testimony.    Lomer v. Meeker, 25 N. Y. 363.    In such cases it is the general rule that a jury is bound to believe for judicial purposes such uncontradicted evidence.    Elwood v. Telegraph Co., 45 N. Y. 553.    In the case of Kelly v. Burroughs, reported in 102 N. Y. 95, 6 N. E. 109, the question was whether after the plaintiff, who, of course, was interested, had testified to important particulars, and there was no conflict of evidence, the case should have been submitted to the jury.    Danforth, J., reading the opinion, says:    "The mere fact that the plaintiff, who testified to important particulars, was interested, was unimportant in view of the fact that there was no conflict in the evidence, or any thing or circumstance from which an inference against the fact testified to by him could be drawn;" and the court held that it was not necessary to have submitted to the jury the question testified to by him.    In the case of Robinson v. McManus, reported in 4 Lans. 387, the court says:    "The positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by the court or jury arbitrarily or capriciously."    And later, in Denton v. Carroll, 4 App. Div. 535, 38 N. Y. Supp. 920, it is stated:    "A jury is not at liberty to disregard the evidence of any witness who is not impeached, and whose testimony is such that its truth is highly probable."    The tendency of the latter case seems to be that a jury is not authorized to disbelieve the uncontradicted evidence of a party or of an interested witness simply because he is a party or is interested therein.    Now, we have upon this question a very recent case,—People v. Tuczkewitz, 149 N. Y. 251, 252, 43 N. E. 548,—wherein the court cites the case of Lomer v. Meeker, 25 N. Y. 361, with approval, and declares it to be the clear duty of the court to set aside the verdict of a jury founded upon a disbelief of clear, uncontradicted, undisputed evidence.    It seems to me that there can be no other conclusion safely arrived at in considering the evidence in this case.    The appellant, who was the plaintiff in the court below, testified distinctly and emphatically that the coal in question was purchased with the proceeds of his pension.    He was not impeached, nor was he contradicted.    Still the jury rendered a verdict which practically disregarded the evidence of the plaintiff, and virtually declared that his testimony was untrue.    I think in that respect the jury acted unadvisedly, capriciously, and in an unwarranted manner upon the evidence before them.    Their verdict should have been in favor of the plaintiff for the value of the ton of coal as proven.

Most of the cases cited by the respondent in his argument upon this appeal turn upon questions involving uncontradicted evidence, and interest of witnesses and parties, or witnesses who have been impeached.    That question does not arise in this case, and the court has no difficulty in overcoming all the arguments made by the learned counsel to sustain the judgment rendered in the court below.    It is clear to my mind that the general rule of law is as has been stated in the cases hereinabove cited.    It has also been held in numerous cases that the county court not only may, but should, reverse the judgment of the court below, if there is no conflict of evidence, and the judgment is contrary to clear, undisputed, and unimpeached testi-

mony.  Baylies, New Trials, 448; Robertson v. Ketchum, 11 Barb. 656; Fish v. Skut, 21 Barb. 333; Marselis v. Seaman, Id. 324; Newton v. Pope, 1 Cow. 109.  In cases like this, if courts or juries were justified in disregarding and ignoring the undisputed and uncontradicted evidence of a party seeking protection of his legal rights, where such have been invaded, and an attempt made to wrest from him that which, by sanction of law and the approval of the highest courts of judicature in the commonwealth, is guarantied to him, then, and in such event, no soldier could have and enjoy that which a generous government has granted him as a reward for his patriotism and bravery in risking his life in the service of our common country.  I believe that the soldier should be protected by every legal safeguard that may be thrown around him in the enjoyment of his pension and his bounty received from the United States government, and that, when an attempt has been made to wrest such from him by any mandate of the court, his testimony bearing upon the question of his purchase of such property as is sought to be taken from him with the proceeds of that protected fund should be taken as true when uncontradicted; otherwise, the beneficent donations of the government and the wise and just laws of our country would be set at naught, become inoperative, null, and void.  Such was not the intention of the congress of the United States nor of the legislature of the state of New York. I am strongly of the opinion that the plaintiff was justly entitled to a verdict in his favor from the jury in the court below, and that the verdict as rendered was contrary to evidence, and should be reversed.

Ordered accordingly.