## MARY C. ROBINSON *v.* ANDREW J. CHURCH.

Suffolk, September, 1899.

*Tax Title — Registration — What Proof Necessary.*

This is a petition for registration of a tax title. The case having been brought as a test case to determine the status of tax titles under the land registration act, the attorney general has appeared on behalf of the public and the matter has been very fully argued on his part, as well as by the parties immediately in interest.

Under the recent decision in Burke *v.* Burke, where one seeks to show that the title of another has passed to himself by virtue of a tax sale, he must prove, by evidence outside the recitals of the tax deed, that everything has been done which the statute calls for as a condition precedent to the transfer of the property. Burke *v.* Burke, 170 Mass. 499.

The question of what things it is necessary to prove as being essential to the validity of a tax sale, is a question, however, on which there is not only a marked conflict of authorities in different jurisdictions, but one as to which there has been of recent years a decided development and change in the tendency of the law, both statutory, and by judicial decision, in Massachusetts. The number of tax sales made each year has greatly increased, and the provisions of the statutes affecting them have become both numerous and complicated. While a few years ago the loss of an estate by tax sale was an unusual event exciting general notice in the community, to-day about two million dollars' worth of property (by assessed valuation) is sold for taxes in the city of Boston alone.

The whole tax proceedings from the beginning to the end are statutory, and it is of great importance to the rights of property that positive regulations of statute which authorize its seizure and sale without the consent of the owner should be strictly complied with. Alexander *v*. Pitts, 7 Cushing, 503.

In some jurisdictions proof of a strict and literal compliance with every requirement of statute, seems to be necessary to the validity of a tax title. Brown *v*. Wright, 17 Vt. 97. Polk *v*. Rose, 25 Maryland, 153. People *v*. Hastings, 29 Cal. 449. Payson *v*. Hall, 30 Maine, 319. Brevoort *v*. Brooklyn, 89 N. Y. 128.

On the other hand it is necessary to the administration of government that taxes should be collected, and the tendency of modern cases is to make tax sales reasonably practicable. As said by Judge Cooley, the time has gone by when the proceedings of tax officers are to be scrutinized with microscopic nicety. The policy of the law is for the collection of taxes, with an appeal to the courts to regulate errors or to compensate for any injuries. Stockle *v*. Siblee, 41 Mich. 615.

It is urged both for the attorney general and the respondent Church that proof should be required from the petitioner of compliance with a long array of technical steps and statutory provisions, and in support of such contention citations are offered from the text books, from decisions in other states, and from early cases in Massachusetts. It is not advisable to consider these in detail. It is sufficient to note first, that in Massachusetts many of the statutory requirements have long been held to be directory only, and second, that many matters which under the early decisions would avoid a tax sale, since the statute of 1859 are no longer sufficient for that purpose. Torrey *v*. Millbury, 21 Pick. 64. Acts of 1859, c. 118; Acts of 1888, c. 390, sec. 94. Cone *v*. Forrest, 126 Mass. 97.

In addition to his general contention as above stated, the respondent Church makes certain specific requests for rulings. He contends that proof must be made that the board (of aldermen) levying the tax were duly elected and qualified. This matter, however, is one that is altogether too remote. It is the duty of the assessors to make assessment, and of the collectors to make collection, of the public taxes as certified to them from the respective public bodies granting, authorizing and requiring the tax. That the respective legislative county and city authorities who constitute for this purpose not the officials by whose acts the land owner is deprived of his estate, but the public government itself, were duly elected and qualified, must be presumed. Alvord v. Collin, 20 Pick. 418. Williams v. Lunenburg, 21 Pick. 75. Sprague v. Bailey, 19 Pick. 436. Blackstone v. Taft, 4 Gray, 250.

The respondent also contends that it must appear that the tax was levied for a lawful purpose, and that all the items of the appropriation were authorized by law; and in support of his contention cites among other early cases: Libby v. Burnham, 15 Mass. 144. Stetson v. Kempton, 13 Mass. 272. Goodrich v. Lunenburg, 9 Gray, 38. We think that this is no longer the law however. The statute of 1859 was evidently passed in consequence of the decision in Goodrich v. Lunenburg. Under the provisions of that statute illegality in the assessment or apportionment of a tax does not invalidate the sale. Cone v. Forrest, 126 Mass. 97. Southworth v. Edmands, 152 Mass. 203. The word " illegality " in the Act of 1859 has however by gradual transition become " irregularity " in the present statute. In the Act of 1859 c. 118, sec. 4, it is provided that " whenever, by any erroneous or illegal assessment or apportionment of taxation, any party is assessed more or less than his due and legal proportion, such tax and assessment shall be void only to the extent of the illegal excess of taxation, whenever such exists; and no

party shall recover in any suit or process based upon such error or illegality, greater damages than the amount of such excess." In the revision of 1860 the provisions of the Act of 1859 were divided between G. S. chap 11, sec. 54, and chap. 12, sec. 56. By G. S. chap. 12, sec. 56, it was provided that "damages based upon any error or illegality in the assessment or apportionment of a tax shall not be greater than the excess of the tax, and no sale shall be avoided by reason of any such error or irregularity." P. S. chap. 12, sec. 84 followed the language of G. S. chap. 12, sec. 56. By sec. 94 of Chap. 390 of the Acts of 1888, the word "illegality" in the clause relating to damages is changed to "irregularity," so that in both places where the word "illegality" appeared in the 1859 statute, the word "irregularity" is used in the present one. It was expressly held in Cone v. Forrest, however, that no change in the law was effected by the change in phraseology in the revision of 1860, and I think that the same remains true under the revision of 1888, and that we are still governed by Cone v. Forrest, and Southworth v. Edmands.

The evidence in this case shows that the assessor's lists were taken in books, and these books while in process of copying by the assessor's clerks were kept in the assessor's office where they could be seen by any one on inquiry or demand, but could not be seen otherwise; the copies of these books constituted the list committed to the collector, and, after the commitment of the copied lists to the collector, and not until then, were the originals deposited and set apart for public inspection; these lists were not in the form called for by Public Statutes, chapter 11, sections 50-52. On this evidence the respondent asks for a ruling that the sale was void. The particular provisions of the statutes in question must be deemed to be directory only. They were complied with in substance. Exact and literal compliance is not essential to the validity of the sale. This matter is fully covered by the

cases: Sprague *v.* Bailey, 19 Pick. 436. Torrey *v.* Millbury, 21 Pick. 64. Mass. General Hospital *v.* Somerville, 101 Mass. 319. Westhampton *v.* Searle, 127 Mass. 502. Noyes *v.* Hale, 137 Mass. 266. Lowell *v.* County Commissioners, 152 Mass. 372.

A more difficult matter is the request for a ruling that the petitioner must prove that the officers immediately exercising the necessary statutory authority were officers de jure. On this point there is a distinct conflict of authority. The general principle is well established that so far as the rights of third persons or of the public are concerned proof that public officers are officers de jure need not be made, but the acts of officials de facto are valid. An exception to this rule exists in some jurisdictions as to a sale of land for payment of taxes. Mr. Blackwell thinks that the better opinion is, that " where a tax is assessed and the proceedings are conducted by officials de facto the sale will be maintained." Blackwell on Tax Titles; Section 185, and cases there cited. So in New Hampshire, it is sufficient that they be officers de facto. French *v.* Spaulding, 61 N. H. 395. In Maine on the contrary the officers must be officers de jure. Payson *v.* Hall, 30 Maine, 319. Dresden *v.* Goud, 75 Maine, 298.

In Massachusetts no rule has of late years been definitely enunciated. In the earlier case, however, the de jure rule as to tax sales was clearly recognized. Alvord *v.* Collin, 20 Pick. 418; and earlier cases there cited. Sprague *v.* Bailey, 19 Pick. 436. Goodrich *v.* Lunenburg, 9 Gray, 38. This was subsequently modified by the Act of 1859, as to errors and illegalities in the assessment or apportionment of the tax; but except as so modified, still stands unchanged. It seems to me, therefore, contrary to Mr. Blackwell's view, that the same principle must control throughout, and that there can be no different rule for proof of authority of the officer, from that controlling other proof of compliance with the provisions of the statute. The criterion in both cases is whether

the act as to which the statutory provision applies, is an act that immediately affects the individual citizen whose property is taken from him under the authority of the statute.

As stated in Torrey *v.* Millbury, it is not easy to distinguish between some of the statutory provisions which are directory and some which are mandatory. I think, however, that the general rule may be deduced from the cases, that those provisions which are intended for the security and benefit of the individual citizen, whose land is taken from him without his consent, are mandatory, while those which are intended to secure regularity and uniformity in the proceedings of assessors throughout the state, are merely directory. Bemis *v.* Caldwell, 143 Mass. 299. Southworth *v.* Edmands, 152 Mass. 203. Lunenburg *v.* Chair Company, 118 Mass. 540. This rule may be made still more definite by limiting it further to such provisions only as immediately affect the individual citizen whose property is taken from him under the authority of the statute.

Applying the rule of law as above developed to the evidence offered in this case, I think that to establish the validity of a tax title there must be proved:

First — The election and qualification of the assessors.

Second — Notice to citizens of impending assessment as by the ordinary notice to bring in their lists.

Third — Receipt by the assessors of the requisition for taxes.

Fourth — Assessment of locus to the proper person.

Fifth — Commitment to the collector of the tax lists.

Sixth — That the collector was an officer de jure.

The above provisions being "intended to secure equality of taxation and to enable the citizen to ascertain with reasonable certainty for what estate he is taxed," are, therefore, essential to the validity of the sale. Bemis *v.* Caldwell, 143 Mass. 299.

All other provisions prior to the demand by the collector

# NECESSARY STEPS IN PROOF OF TAX
## TITLE BEFORE MASTERS.

(1)    As to assessors.
>        Should appear from the books of the City Clerk
>        (in Boston, Assistant City Clerk); in Boston the
>        appointment and qualification of the principal
>        Assessors will appear in the City Clerk's records;
>        appointment of Assistant Assessors will be shown
>        by Assessors' Records.

(2)    As to City Collector.
>        Appointment or election and oath from City Clerk's
>        records; bond as case may be.

(3)    Notice to Citizens to Bring in Lists.
>        This from Assessors' records.

(4)    Appointment of Assistant Assessors, and Assignment to Their
>        Respective Districts.  This only where Assistant
>        Assessors are appointed.

(5)    Receipt by Assessors of Requisition of Taxes.
>        This from Assessors' records.

(6)    Assessment of Locus to Proper Person.
>        Valuation book shows amount; street book shows locus.

(7)    Commitment to Collector of the Tax List.
>        This called Collector's Manuscript, or Tax-List.

(8)    Publication.
>        May be shown by affidavit recorded in the Regis-
>        try or direct from the newspapers.

(9)    Appointment and Qualification of Deputy Collector.
>        If any, from Collector's Records.

(10)   Demand and Notice.
>        Affidavit from Registry of Deeds.

(11)   Proof of recitals in the deed.

(12)   Compliance with statutory requirements as to Collector's
>        deed.

upon the individual owner, appear to be directory only, or made unessential under the express provision of the 1859 statute.

All provisions after and including the demand are mandatory; and proof of strict compliance therewith by duly authorized officers must be made. Alexander v. Pitts, 7 Cushing, 503. Harrington v. Worcester, 6 Allen, 576. Knowlton v. Moore, 136 Mass. 32. Lunenburg v. Chair Company, 118 Mass. 540. Burke v. Burke, 170 Mass. 499.

By strict compliance is meant a substantial and reasonably exact compliance. A precision or nicety of language which it would be unreasonable to expect will not be required. Adams v. Mills, 126 Mass. 278. Pixley v. Pixley, 164 Mass. 35.

Decree for petitioner.

W. O. Childs for petitioner.
F. A. North for Attorney General.
G. W. Bartlett for respondent Church.