John Wentworth vs. Henry K. Sawyer and another.

Somerset.     Opinion October 25, 1884.

*Attachment of personal property.   Exemption.   Trespass.   Amendment.*

The attachment of hay in a mow on mesne process is preserved by the officer, by filing with the town clerk a copy of his return and certificate of other facts required by R. S., c. 81, § 24.

By filing such a copy and certificate with the clerk, the officer does not deprive himself of the right to regain actual possession of the property attached, whenever necessary for its preservation.

The amendment of a writ, by striking out the middle letter in the name of the defendant, will not dissolve an attachment of personal property when the suit is between the original parties, and no rights of third persons intervene.

When an officer in the attachment and removal of hay does not leave the requisite amount to keep the stock which the defendant owns, exempt from attachment, at the time of the attachment, he thereby becomes a trespasser as to so much as is taken beyond what is authorized by law, but not *ab initio* as to all the hay taken.

On report.

Trespass for taking and carrying away seven tons of hay which belonged to the plaintiff.   The writ was dated December 4, 1882. The plea was the general issue and brief statement setting forth the defence stated in the opinion.

The opinion states the material facts.

*John H. Webster*, for the plaintiff.

If a valid attachment was made it was not preserved.   If preserved, the officer's duty towards it and his jurisdiction were ended, and moving the hay afterwards constituted a trespass.

As the common law required property attached to be kept by the officer or his servant, so is the law to-day, except when express statutes make other provisions.   And if the officer or his servant suffers it to go into the hands of defendant, the attachment is discharged, even if a receiptor be taken.   *Knap* v. *Sprague*, 9 Mass. 258 ; *Campbell* v. *Johnson*, 11 Mass. 184 ; *Bridge* v. *Wyman*, 14 Mass. 190–3 ; *Gower* v. *Stevens*, 19 Maine, 92 ; *Pillsbury* v. *Small*, 19 Maine, 435 ; *Nichols* v. *Patten*, 18

Maine, 231; *Thompson* v. *Baker*, 74 Maine, 48; *Sanderson* v. *Edwards*, 16 Pick. 144; *French* v. *Stanley*, 21 Maine, 512; *Mitchell* v. *Gooch*, 60 Maine, 110; *Waterhouse* v. *Bird*, 37 Maine, 326.

The fact that it has been deemed necessary to provide by special enactment for retaining an attachment lien upon some articles without retaining possession, is conclusive proof that as to all others the lien can only be retained by actual possession.

The first statute provision for retaining a lien by virtue of an attachment of articles capable of being removed, without removal, that I find, is c. 60, § 34, statutes of 1821, which allows hay in barn, sheep, horses, neat cattle to be left with the debtor on security given, etc. What the necessity of that enactment if without it, on security given, the lien could be retained and the property remain with the debtor? The same provision, with the omission of sheep, is incorporated into every revision of the statutes since made. R. S., 1841, c. 114, § 37; 1857, c. 81, §. 34; 1871, c. 81, § 23, and is now the law of this state.

By these statutes since March 15, 1821, a mode, in addition to the common law mode of retaining an attachment lien was provided, making two modes of retaining lien, on hay in the barn, horses and neat cattle, and from March 15, 1821, to July 31, 1841, on sheep. On July 31, 1841, by that revision, c. 114, § § 39, 40, 53, 54, 55, 56, 57, 58, three different modes applicable to different articles therein specifically named are provided, and by § 52, a fourth, applicable to all articles is provided, by which a lien by attachment or its equivalent is retained. Those different provisions applicable specifically to the same specific articles have been re-enacted in the various revisions since, and are now the law of this state. R. S., of 1857, c. 81, § § 35, 47, 48, 49, 50, 51 and 46; R. S., 1871, c. 81, § § 23, 24, 29, 30, 31, 32, 33 and 28.

All these different provisions being in the same chapter, are to be construed so as to harmonize and to give effect to each, if possible. 1 Black's Com. 89; *Merrill* v. *Crossman*, 68 Maine, 412; *Winslow* v. *Kimball*, 25 Maine, 493; *Ingalls* v. *Cole*, 47 Maine, 530; *Dwelly* v. *Dwelly*, 46 Maine, 379; *Collins* v.

*Chase,* 71 Maine, 434; *Holbrook* v. *Holbrook,* 1 Pick. 248; *Com.* v. *Cambridge,* 20 Pick. 267; *Com* v. *Kimball,* 24 Pick. 366; *Cleveland* v. *Norton,* 6 Cush. 380.

The naming of living animals in R. S., 1841, c. 114, § 53, *et seq.*; R. S., 1857, c. 81, § 47, *et seq.*; R. S., 1871, c. 81, § 29, *et seq.* is conclusive evidence that hay in the barn is not subject to any other provision in those chapters than those which provide for leaving it with the debtor on security given or sale by consent.

The officer attempted to make use of three modes of preserving his supposed lien by attachment, thereby so far abusing legal process and increasing the expense as to render him a trespasser, *ab initio.* *Bradley* v. *Davis,* 14 Maine, 44; *Six Carpenters' case,* 8 Coke, 146; *Ross* v. *Philbrick* 39 Maine, 29; *Blanchard* v. *Dow,* 32 Maine, 557; *Knight* v. *Herrin,* 48 Maine, 533; *Sawyer* v. *Wilson,* 61 Maine, 529.

When the officer left the hay in defendant's barn without a keeper or security given, and gave defendant the summons, he abandoned the attachment. *Gower* v. *Stevens,* 19 Maine, 92.

The absolutely fatal defect in defendant's proceedings is the misnomer of defendant, the present plaintiff in the writ, and particularly in the officer's return to the town clerk's office. *Flood* v. *Randall,* 72 Maine, 439; *Dutton* v. *Simmons,* 65 Maine, 583; *Moulton* v. *Chapin,* 28 Maine, 505; *Shaw* v. *O'Brion,* 69 Maine, 501; *Bessey* v. *Vose,* 73 Maine, 217; *Com.* v. *Hall,* 3 Pick. 262; *Com.* v. *Shearman,* 11 Cush. 546; *Com.* v. *McAvoy,* 16 Gray, 235; 1 Gray, 167; 4 Gray, 72.

*C. A. Harrington,* for the defendants, cited: *Darling* v. *Dodge,* 36 Maine, 370; *Reed* v. *Howard,* 2 Met. 36; *Cain* v. *Rockwell,* 132 Mass. 193; 28 Vt. 546; Drake on Att. § 290; *Carr* v. *Farley,* 12 Maine, 328; *Brownell* v. *Manchester,* 1 Pick. 232; *Bond* v. *Padelford,* 13 Mass. 393; 43 N. H. 115; *Hubbell* v. *Root,* 2 Allen, 185; Spaulding's Pr. 332; *Emerson* v. *Upton,* 9 Pick. 167.

FOSTER, J. The plaintiff claims that the defendants were trespassers in the attachment and removal of a quantity of hay,

of which he was the owner, in a suit wherein he was defendant, and Sawyer, one of the present defendants, was plaintiff. The question involved in this suit is whether the officer proceeded legally in the discharge of his duty in making said attachment, and in the subsequent removal and sale of the property on mesne process.

The case shows that on the 18th day of November, 1882, the defendant Sawyer sued out a writ of attachment against this plaintiff by the name of John A. Wentworth; that on the 20th of said month the writ was placed in the hands of the other defendant, a deputy sheriff, for service, and that on the same day he made service by attaching seven tons of hay then lying in the plaintiff's barn in Smithfield, filing a certificate of the attachment in the office of the town clerk as provided by R. S., c. 81, § 24, and leaving a summons at the defendant's place of last and usual abode. On the second day of the following month, ascertaining that the hay was diminishing in quantity, the officer, in company with the other defendant in this action, proceeded to remove it from the premises to a place of safety, and after due proceedings, before judgment in the suit, advertised and sold the same on the 20th day of April, 1883.

At the December term of court, being the term at which the action was entered, the writ on which the attachment had been made was amended by striking out the letter A in the defendant's name.

The plaintiff seeks to recover in this action on the ground that the proceedings of the officer were irregular in perfecting the attachment, and if any was made that the same was not preserved; that the misnomer, and amendment of the writ, dissolved any attachment if made; and lastly, that the officer did not leave the requisite amount of hay which the statute exempts to a debtor, and thereby he became a trespasser *ab initio*.

We will consider these objections in the order in which they are raised.

It is not denied that the officer was present at the place where the hay was situated at the time of the attachment, and that he took it into his possession so far as in reference to this descrip-

tion of property it could be conveniently done, and that his acts°
and dominion over the property were such as to justify him in
making the return that it had been attached. The facts set forth
in his return would be *prima facie* evidence, until the contrary
were shown. *Bruce* v. *Holden,* 21 Pick. 189; *Darling* v.
*Dodge,* 36 Maine, 370.

The nature of the property was such that the officer was
justified in preserving the attachment by filing with the town clerk
a copy of the return, and a certificate of other facts prescribed
by statute. Before the enactment of the statute authorizing a
copy of such return and certificate to be filed with the clerk of
the town, the law required that in order to perfect and continue
an attachment of personal property, the officer should retain
possession and control of the same. *Nichols* v. *Patten,* 18
Maine, 238; *Gower* v. *Stevens,* 19 Maine, 94; *Heard* v. *Fair-
banks,* 5 Met. 113. Difficulties afterwards arose as to the kind
of possession and control necessary to satisfy the requirements
of the law. To obviate these difficulties, and give a more
complete notice, R. S., c. 81, § 24 provides that " when any
personal property is attached, which by reason of its bulk or
other special cause cannot be immediately removed, the officer
may, within five days thereafter, file in the office of the clerk of
the town, in which the attachment is made, an attested copy of
so much of his return on the writ, as relates to the attachment,
with the value of the defendant's property which he is thereby
commanded to attach, the names of the parties, the date of the
writ, and the court to which it is returnable; and such attachment
shall be as effectual and valid, as if the property had remained
in his possession and custody." It will be seen by this provision
that " no attempt is made to change the mode of making the
attachment, but a new and easier method of preserving it is
provided. Before this statute there was not so much difficulty
in making as in preserving attachments" of this kind of property.
*Scott* v. *Manchester Print Works,* 44 N. H. 508.

Nor are we satisfied that the officer, by filing with the town
clerk the copy and certificate required by statute, deprived
himself of the right to regain actual possession of the property

attached, and remove it whenever necessary for its preservation. The sheriff is the "mere minister of the law" to preserve for the creditor satisfaction of the debt, and it is therefore indispensably necessary that he should sustain such a relation to personal property which he has seized, as will enable him to hold it to answer the purpose for which it was attached. His relation to the property by virtue of the attachment, and the reduction of it into his possession and control, are such that he is vested with a special property in it which enables him to protect the rights he has acquired, and this special property continues so long as he remains liable for it, either to have it forthcoming to satisfy the plaintiff's demand, or to return it to the owner, upon the attachment being dissolved. Drake, Attach. § 290. "In the attachment of personal estate, the officer acquires a special property, and a right to its custody and possession. For any injury to it, the right of action is in the officer, as, in any termination of the case, he is accountable for the property, either to the creditor or debtor. That special property the officer may release, so as to destroy any lien upon the property created by the attachment. He may permit the possession of the property to remain with the debtor, in which case it can be held by a subsequent attachment, or a subsequent purchaser, free from any lien or claim of the officer upon it. His right over the property is independent of the creditor or debtor, as, in a given event, he is responsible for it to the debtor, and in another event to the creditor; and that right exists so long as that special property continues in him." *Braley* v. *French,* 28 Vt. 546. The statute has so far modified the common law in relation to attachments of property of this nature, that when the officer has complied with its provisions, "such attachment shall be as effectual and valid, as if the property had remained in his possession and custody." It is the statute mode of preserving the lien which otherwise could only have been retained by actual custody and possession of the property by the officer. *Woodman* v. *Trafton,* 7 Maine, 179; *Nichols* v. *Patten,* 18 Maine, 238; *Darling* v. *Dodge,* 36 Maine, 371; *Johnson* v.

*Railway*, 44 N. H. 627; *Scott* v. *Manchester Print Works*, 44 N. H. 508; *Polley* v. *Lenox Iron Works*, 15 Gray, 514.

The statute provision is one that also, to a certain extent, relieves the officer from the more stringent liabilities of the common law in relation to the property attached, but nevertheless his right to possession continues, and he may interfere " to protect the property, when, by a change of circumstances, its removal and reduction into the officer's possession become proper or necessary." *Hubbell* v. *Root*, 2 Allen, 186; *Carr* v. *Farley*, 12 Maine, 331; *Polley* v. *Lenox Iron Works*, 15 Gray, 515; *Same* v. *Same*, 4 Allen, 329.

The plaintiff further contends that by the amendment of the writ, the attachment was dissolved. This proposition is not tenable. It must be remembered that this suit is between the original parties, and no rights of third persons, claiming either by purchase or attachment, intervene. "The power of our courts," as remarked by MORTON, C. J., in *Cain* v. *Rockwell*, 132 Mass. 194, " to allow amendments, is very broad." In that case, the name of the plaintiff was amended by substituting " Ann " Cain for " Mary " Cain, thus correcting a mere clerical error or misnomer, as the court there say. The rights of third parties had there intervened by assignment of the funds attached on trustee process, but the court held that the amendment was rightly allowed, and that the attachment of the funds was not vacated so as to give the assignment to the claimant, made before the amendment, the preference over the attachment. " Amendments in form merely, will not dissolve an attachment so as to let in subsequently attaching creditors, or discharge bail. To have this effect, the amendment must be such as may let in some new demand, or new cause of action. " *Haven* v. *Snow*, 14 Pick. 28; *Page* v. *Jewett*, 46 N. H. 444.

In the case before us, the misnomer of the defendant in that suit was purely clerical, and the amendment could not injuriously affect him. It was not introducing any new demand, or new cause of action. It came fairly within the power given by statute to correct circumstantial errors or defects, when the person and case can be rightly understood. It was between the

original parties, and the rights of third persons could in no way be affected by the amendment. In all the cases to which our attention has been called by the learned counsel for the plaintiff, as bearing upon the question of amendment, and where a more stringent rule has been applied with reference to the dissolution of attachments, it will be found that the rights of third parties have, in some way, intervened. In the case we are considering, the amendment having been properly allowed, "the amended writ is treated as it would have been, if so made, when the suit was commenced, as between the parties thereto." *Heath* v. *Whidden*, 29 Maine, 111; *Griffin* v. *Pinkham*, 60 Maine, 123; *Wight* v. *Hale*, 2 Cush. 486.

But there is another branch of the case on which the plaintiff must prevail. Having carefully examined the evidence in full, we are satisfied that the officer removed more hay under the attachment than he was warranted in doing, and that there was not a sufficient quantity left to this plaintiff. The stock which he owned at the time of the attachment, consisted of one yoke of oxen, a horse, cow, heifer and nine sheep. The plaintiff being the owner of more stock than he could legally claim exempt under the statute, and having waived no rights, as the evidence satisfies us, we must assume that he would be entitled to have left an amount of hay sufficient to keep such stock as was exempt — and most beneficial to himself — through the winter season. This was not done. The officer having removed a portion of the hay to which this plaintiff was by law entitled, thereby became a trespasser, and liable to the plaintiff in this action.

The question then becomes important whether the officer was a trespasser *ab initio* as to all the property taken, or only as to so much as was taken beyond what was authorized by law.

The authorities upon this point, both English and American, are that it is only for the excess that the officer would be liable. The distinction running through the more modern cases, — not at variance with those of earlier date, — is marked, that there may be an abuse of authority by an officer which will affect his acts, and render him liable as a trespasser, only in relation to a

portion of the property, especially when the same is capable of division, and where, in reference to that property, the acts done in excess may be distinguished from those done in pursuance of authority.    *Wheeler* v. *Raymond*, 130 Mass. 247 ; *Cone* v. *Forest*, 126 Mass. 101.    Where the act done is wrongful, but· is so merely as to a part of the goods, no wrong being done as to the residue, the wrong-doer is a trespasser as to that part of the goods only in respect of which the wrongful act was done. As in the case of *Dod* v. *Monger*, 6 Modern, 215, where several barrels of beer were distrained for rent, and the distrainer drew beer out of one of them, Lord HOLT held, that it rendered him a trespasser *ab initio* only as to that single barrel.    In *Harvey* v. *Pocock*, 11 M. & W. 744, it was decided that where a landlord distrained for rent, with other things, goods not distrainable, the distrainer was a trespasser only as to the goods which were not distrainable.    Lord ABENGER, C. B., alluding to *Dod* v. *Monger*, 6 Modern, 215, and to the early case of *Six Carpenters*, 8 Coke, 146, says, "The case in 6 Modern is undoubtedly a very strong authority for the defendants.    The *Six Carpenters' Case* leaves it an open question how far the party becomes a trespasser *ab initio* as to the whole distress by an excess as to part.    It is very reasonable that he should not, but that his liability should be limited according to the doctrine laid down by Lord HOLT."    The same views are held by the present Chief Justice of this court in *Seekins* v. *Goodale*, 61 Maine, 404, wherein he says : "We think a fair construction of the rule established in the *Six Carpenters' Case*, makes the defendant liable as a trespasser *ab initio* only for the sale of so much of the goods as were sold in excess, and not for those sold in pursuance of authority."    The same doctrine is stated in 1 Smith's Leading Cases, * 219, as follows : "But if there be a seizure of several chattels, some of which are subsequently abused and the rest not, the seizure is, or becomes, illegal only as to the part which it was unlawful to seize, or which was subsequently abused, and the seizure of the rest continues legal."

Of the liability of both defendants there can be no question.

*Coaks* v. *Darby*, 2 N. Y. 517; *Woodbridge* v. *Conner*, 49 Maine, 353.

*Judgment for plaintiff for $18.00 and interest thereon from December 2, 1882.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and EMERY, JJ., concurred.