## McGUIRE *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR
THE SECOND CIRCUIT

No. 85.   Argued November 24, 1926.—Decided January 3, 1927.

Samples of intoxicating liquor constituting part of a quantity seized by federal officers under a valid search warrant may consistently with the Fourth and Fifth Amendments be used as evidence against the occupant of the premises, in a prosecution under the Prohibition Act, even though when they made the seizure the officers unlawfully destroyed the remainder of the liquor, and even assuming that, by so doing, they became civilly liable as trespassers *ab initio*.   P. 97.

ANSWER to questions propounded by the Circuit Court of Appeals, 6 Fed. (2d) 276, upon review of a conviction of McGuire in the District Court for a violation of the Prohibition Act.   300 Fed. 98.

*Mr. Ransom H. Gillett* for the plaintiff in error.

Congress never intended to authorize government officers to summarily destroy either liquor or any other kind of property which they seized when acting under the authority conferred upon them by a search warrant. *Steele* v. *United States,* 267 U. S. 498; *United States* v. *9 Bbls. Beer,* 6 Fed. (2d) 401; *Murby* v. *United States,*

293 Fed. 849; *Giles* v. *United States*, 284 Fed. 208; *In re Quirk*, 1 Fed. (2d) 484; *Godat* v. *McCarthy*, 283 Fed. 689; *United States* v. *Certain Intoxicating Liquor*, 291 Fed. 717; *Keefe* v. *Clark*, 287 Fed. 372. The government officers were trespassers *ab initio*. *Averill* v. *Smith*, 17 Wall. 82; *United States* v. *Cooper*, 295 Fed. 709; *Allen* v. *Crofoot*, 5 Wendell (N. Y.) 507. *B. & M. R. R.* v. *Small*, 85 Me. 462.

*Mr. Alfred A. Wheat*, Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

For the purposes of the present case the revenue officers did not become trespassers *ab initio* because they destroyed a part of the liquor seized. *Hurley* v. *United States*, 300 Fed. 75; *In re Quirk*, 1 F. (2d) 484; *United States* v. *Clark*, 298 Fed. 533; *Giacolone* v. *United States*, 13 Fed. (2d) 108; *United States* v. *Old Dominion Warehouse*, 10 F. (2d) 736; *People* v. *Schregardus*, 226 Mich. 279; *State* v. *Germain*, 132 Atl. Rep. 734; *United States* v. *Cooper*, 295 Fed. 709; *Six Carpenters*, 8 Coke 146; *Allen* v. *Crofoot*, 5 Wend. 506. Distinguishing, *Averill* v. *Smith*, 17 Wall. 82; *Ferrin* v. *Symonds*, 11 N. H. 363.

MR. JUSTICE STONE delivered the opinion of the Court.

McGuire was convicted in the District Court for northern New York of the crime of possessing intoxicating liquor in violation of the National Prohibition Act. 300 Fed. 98. On review of the judgment of conviction, the Court of Appeals for the Second Circuit certified to this Court two questions concerning which it desires instructions. 6 Fed. (2d) 576, § 239 Jud. Code.

The certificate states that before the filing of the information on which McGuire was convicted, a search warrant was issued by a United States Commissioner com-

manding certain revenue agents to enter and search described premises for liquors alleged to be possessed by McGuire. The officers named, acting under the warrant, searched the premises, discovering several gallons of intoxicating liquor which they seized. While there, they destroyed without court order or other legal authority all the seized liquor except one quart of whiskey and one quart of alcohol, which they retained as evidence. On the trial the liquor retained was received in evidence over the objection that it was inadmissible because of the destruction of the other liquor. The questions certified are:

"1st. Were the officers of the law by reason of their action in destroying the liquors seized trespassers *ab initio?*

"If the answer to the first question is in the affirmative, we ask

"2d. Was the admission in evidence of the samples of liquor unlawful?"

It is contended that the officers by destroying the seized liquor became trespassers *ab initio;* that they thus lost the protection and authority conferred upon them by the search warrant; that therefore the seizure of the liquor, both that destroyed and that retained as evidence, was illegal and prohibited by the Fourth Amendment; and that the reception of the liquor in evidence violated the Fourth and Fifth Amendments to the Constitution. This conclusion has received some support in judicial decisions. *United States* v. *Cooper,* 295 Fed. 709; cf. *Godat* v. *McCarthy,* 283 Fed. 689. But the weight of authority is against it. *Hurley* v. *United States,* 300 Fed. 75 (overruling *United States* v. *Cooper, supra*); *Giacolone* v. *United States,* 13 Fed. (2d) 108; *In re Quirk,* 1 Fed. (2d) 484; *United States* v. *Clark,* 298 Fed. 533; *People* v. *Schregardus,* 226 Mich. 279.

42847°—27——7

That the destruction of the liquor by the officers was in itself an illegal and oppressive act is conceded.[1] But it does not follow that the seizure of the liquor which was retained violated constitutional immunities of the defendant or that the evidence was improperly received. The arguments advanced in behalf of the accused concern primarily the personal liability of the officers making the search and seizure for their unlawful destruction of a part of the liquor seized. They have at most a remote and artificial bearing upon the right of the government to introduce in evidence the liquor seized under a proper warrant.

The doctrine of trespass *ab initio*, chiefly relied upon, is usually traced to the case of the *Six Carpenters*, 8 Coke 146(a). There, in a civil action for trespass, the principle was announced that where one enters the premises of another under authority of law, his subsequent misconduct while there taints the entry from the beginning with illegality. See as to the origin of the rule, *Commonwealth v. Rubin*, 165 Mass. 453, 455. This fiction, obviously invoked in support of a policy of penalizing the unauthorized acts of those who had entered under authority of

---

[1] Section 25 of the National Prohibition Act provides for the issuance of search warrants pursuant to the requirements of Title XI of the Espionage Act; June 15, 1917, c. 30, 40 Stat. 228–230, and that seized property "be subject to such disposition as the court may make thereof." The Espionage Act regulates the issuance, execution and return of warrants. If the grounds on which the warrant was issued be controverted, a hearing before a judge or commissioner must be held (§ 15); and the property returned if erroneously taken. But if the warrant properly issued and the property seized was that described in the warrant, "then the judge or commissioner shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law" (§ 16). "An officer who in executing a search warrant wilfully exceeds his authority or exercises it with unnecessary severity, shall be fined not more than $1000 or imprisoned not more than one year" (§ 21).

law, has only been applied as a rule of liability in civil actions against them. Its extension is not favored. See Salmond, *Law of Torts,* 5th Ed. § 54; Jeremiah Smith, *Surviving Fictions,* 27 Yale Law Journal, 147, 164, *et seq.* Thus it has been held to have no application in criminal actions against the trespasser. *State* v. *Moore,* 12 N. H. 42. Nor does the unlawful distraint or attachment of certain articles make unlawful the seizure of property otherwise rightfully taken at the same time. *Harvey* v. *Pocock,* 11 M. & W. 740; *Wentworth* v. *Sawyer,* 76 Me. 434, 441; *Cone* v. *Forest,* 126 Mass. 97, 101; cf. *Dod* v. *Monger,* 6 Mod. 215.

Even if the officers were liable as trespassers *ab initio,* which we do not decide, we are concerned here not with their liability but with the interest of the Government in securing the benefit of the evidence seized, so far as may be possible without sacrifice of the immunities guaranteed by the Fourth and Fifth Amendments. A criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to rule. The use by prosecuting officers of evidence illegally acquired by others does not necessarily violate the Constitution nor affect its admissibility. Cf. *Burdeau* v. *McDowell,* 256 U. S. 465; *Adams* v. *New York,* 192 U. S. 585; *Weeks* v. *United States,* 232 U. S. 383, 398. The Fourth and Fifth Amendments protect every person from the invasion of his home by federal officials without a lawful warrant and from incrimination by evidence procured as a result of the invasion. *Weeks* v. *United States, supra; Gouled* v. *United States,* 255 U. S. 298; *Agnello* v. *United States,* 269 U. S. 20; *Amos* v. *United States,* 255 U. S. 313; cf. *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385. Here there was no such invasion. The seizure of the liquor received in evidence was in fact distinct from the destruction of the rest. Its validity so far as the government is con-

cerned should be equally distinct. We can impute to the one the illegality of the other only by resorting to a fiction whose origin, history, and purpose do not justify its application where the right of the government to make use of evidence is involved.

It follows that neither the seizure of this liquor nor its use as evidence infringed any constitutional immunity of the accused. In this view of the case, the answer to the second question in the certificate is not dependent upon the answer to the first which pertains to the personal liability of the officers. Interpreting the second question as an inquiry whether the samples of intoxicating liquor should have been excluded as evidence, the answer is

*No.*

MR. JUSTICE BUTLER concurs in the result.