# THE MASKINONGE.

## MALAGASH FISHING CO., Limited, v. UNITED STATES.

### No. 2747.

Circuit Court of Appeals, First Circuit.
Jan. 31, 1933.

C. Bird Keach, of Providence, R. I. (Daniel T. Hagan, of Providence, R. I., on the brief), for appellants.

Charles H. Eden, Asst. U. S. Atty., of Providence, R. I. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court for the District of Rhode Island, ordering the forfeiture of a bond given for the release of the British motor ship Maskinonge owned by the appellant. The following are the facts leading up to the giving of the bond and its forfeiture:

On the evening of December 16, 1930, the Maskinonge was observed under way, and running without lights, by the officer in charge of Coast Guard vessel 289. At the time the Maskinonge was sighted, she was approximately two miles off the shores of the state of Rhode Island. The usual signals were given, and after a short chase the Maskinonge hove to, and a boarding party from the 289 went aboard. It was discovered that the cargo of the Maskinonge consisted of nearly fifteen hundred sacks of intoxicating liquors fit for beverage purposes, certain packages of candy filled with liquor, and three bottles of perfume. No manifest of the cargo was produced, and it is not contended that the cargo was manifested.

The Maskinonge was then taken to Newport under the custody of Coast Guard vessels 289 and 135, and lay there until the early morning of December 17, when 135 left for Base 4 at New London. Later Coast Guard vessel 212 arrived at Newport, and at 8 o'clock a. m., together with 289, left Newport to take the Maskinonge to New London. It is not shown that anything was removed from the Maskinonge up to this time. Off Fisher's Island they were met by the commander of Base 4, and 289 was ordered to New London and 212 was ordered to take the Maskinonge to Providence, where she was later tied up at the State Pier, where she was turned over to the collector of customs and was guarded by Coast Guard vessels 212 and 284.

During December 17 the cargo of the Maskinonge was removed by the crews of the 212 and 284. On the morning of the 18th the 289 returned from New London, and complaints were made to the commanding officer of 289 that certain articles of personal property of the crew and also certain of the equipment of the Maskinonge were missing.

The master of the Maskinonge was notified that he was liable to the penalties provided in section 584 of the Tariff Act of 1930 (19 USCA § 1584) for failure to produce a manifest of his cargo and to have it manifested. The vessel was appraised at $17,500 and released to the owners on the filing of a bond for that amount. No complaint by the owners appears to have been made at the time of the release of the ves-

.sel that she was not in the condition in which she was seized, or that there was missing any of her equipment.

In the following January, ·1931, a libel was filed in the District Court of Rhode Island for the purpose of establishing against the vessel the penalties incurred by the master of the Maskinonge under section 584 of the Tariff Act of 1930, and collecting the amount of the bond.

. In its answer to the libel the appellant set up as a defense that certain unlawful acts were done· by the crews of the Coast Guard vessels after the Maskinonge was tied up at the State Pier in Providence, and of such a nature as to render the seizing officer a trespasser ab initio· and the seizure unlawful.

The District Court found that the Maskinonge ·was bound for the United States with no manifest of her cargo aboard; that under section 584 of the Tariff Act of 1930 the master of the Maskinonge was liable for the penalties fixed therein, viz. $500· for failure to produce a manifest, and $51,186.72 for having on board an unmanifested cargo of that value; that said penalties were established against the vessel in accordance with the provisions of section 594 of the Tariff Act of 1930 (19 USCA § 1594); that the· claim of an intervening mortgagee was denied; and that the bond given for the release of the Maskinonge was forfeited and the amount was ordered to be paid into court.

The only issue raised by the appellant's assignments of error is whether its defense of trespass ab initio was sustained.

The District Court on this issue stated as his conclusions from the evidence that, while there was evidence of· thievery by members of the crews of the Coast Guard vessels, it did not disclose that any of these depredations were traceable to the officer by whom the Maskinonge was seized, or to those under whose official authority she was in custody at the· State Pier in Providence.

While depredations, even of the nature complained of,·by men whose duty it is to enforce the laws, cannot be too ·strongly condemned, yet it appears that, to whatever· extent it was supported by the evidence, the Coast Guard vessels, immediately on complaint. being made, were ordered searched, and search was also made of the Maskinonge. As a result, nothing was found on board the Coast Guard vessels belonging to the Maskinonge. A search of the Maskinonge, however, resulted in the· discovery and return of some of the missing articles, which were restored to their owners.

But, assuming that thievery was established on the part of the members of the crews of some of the Coast Guard vessels, it does not appear that it can be traced to the seizing officer or to the crew of 289, which did not reach Providence until after the cargo of the Maskinonge was removed and it was discovered that certain articles of the Maskinonge's equipment were alleged to be missing.

The evidence is somewhat indefinite as to when the alleged missing articles were taken, and, as the District Court stated, too much credence cannot be placed on the testimony of the master and crew of the Maskinonge with reference to the "stripping" of their vessel, especially when they were seeking to establish thereby a defense that would save their vessel or the bond from forfeiture.

The finding of the District Court that none of the alleged thievery can be traced to the officer commanding the 289 who made the seizure was clearly warranted by the evidence.

It is admitted by the appellant that, if these proceedings were criminal and against the master or members of the crew of the Maskinonge, the defense of trespass ab initio would not avail them; McGuire v. United States, 273 U. S. 95, 47 S. Ct. 259, 71 L. Ed. 556; Hurley v. United States (C. C. A.) 300 F. 75; but it is contended that, since a libel against the vessel is a civil proceeding, such defense is available. While it is true that a libel against a vessel to recover penalties under section 594 of the Tariff Act of 1930 is a civil proceeding, "it treats the offending vessel as a guilty thing, upon the familiar principle of the maritime law." P. Sanford Ross, Inc., v. U. S. (The Scow "6–S.") 250 U. S. 269, 272, 39· S. Ct. 452, 453, 63 L. Ed. 977. The Supreme Court said in the case of McGuire v. United States, supra, pages 98, 99 of 273 U. S., 47 S. Ct. 259, 260, 71 L. Ed. 556, "This fiction," viz. the doctrine of trespass ab initio, "* * * has only been applied as a rule of liability in civil actions against them [the officers]. Its extension is not favored." We think it could properly be said in this case, as was said of the acts of the officers by the court in McGuire v. United States, supra, that the government in proceedings of this nature should not be checkmated because some of the enlisted men of the Coast Guard have not played according to rule.

When the officer made the seizure, and until delivery to the collector of customs, he had no knowledge whether the master would be prosecuted criminally under the Prohibition Act, or would be penalized under section 584 and the vessel forfeited under section 594 of the Tariff Act of 1930. If criminal proceedings had been brought under the Prohibition Act for transporting liquors within the jurisdiction of the United States, any wrongful acts of the crews of the Coast Guard vessels would not have rendered the seizure unlawful. We do not think it should have that effect because the government saw fit to recover the penalties under the customs laws.

It is not established that there were any wrongful acts in relation to the vessel by the officer seizing the vessel or the officers left in charge of her. Any consumption of the ship's stores of the Maskinonge by the officers and crew of the Coast Guard vessel 289 was with the consent and at the invitation of the master of the Maskinonge. If any wrongful acts were done, they were done by members of the crews of the Coast Guard vessel 212 and 284, who had nothing to do with the original seizure. The District Court expressly found no abuse of authority by any of the officers of the Coast Guard vessels, and we find no warrant in the evidence for a contrary finding, especially by the commanding officer of 289.

▮ Wrongful acts by the crews of the other Coast Guard vessels cannot render the seizure by the commanding officer of the 289 unlawful under the doctrine of trespass ab initio. It is only where an officer, by whom the property of a citizen is taken under the authority of law, abuses the authority vested in him that this doctrine applies, and not where wrongful acts are committed by others of their own volition, and not by the order, direction, or connivance of the seizing officer.

The decree of the District Court is affirmed.

MORTON, Circuit Judge.

I concur in the result. Under the doctrine of trespass ab initio, seizures of property under authority of law in which either the required formalities subsequent to the seizure were not observed (Smith v. Gates, 21 Pick. [Mass.] 55; Williams v. Ives, 25 Conn. 568; Kerr v. Sharp, 14 Serg. & R. [Pa.] 399), or in which the property seized was carelessly or improperly dealt with by the person making the seizure (Barrett v.

White, 3 N. H. 210, 14 Am. Dec. 352, collecting old authorities), are avoided from the beginning. The doctrine leads to actions against the officer or other person making the seizure, and renders him liable as for a conversion of the goods. Upon a pretty careful examination of the authorities, I have found no case in which the liability for such a trespass was imposed upon the party on whose behalf an officer of the law was acting; and McGuire v. United States, 273 U. S. 95, 47 S. Ct. 259, 71 L. Ed. 556, indicates clearly that no such extension is favored. As applied to the present case, the doctrine of trespass ab initio is invoked as creating an *estoppel* against the United States from proceeding with the forfeiture on account of the misconduct of its agents in dealing with property which had been seized by them. No decision supporting such a view has come to our attention.