## Commonwealth v. Miller

*John Y. Scott*, Deputy Attorney General, and *E. Leroy Keen*, assistant district attorney, for Commonwealth.

*Solomon Hurwitz* and *Herbert O. Schaeffer*, for defendant.

Fox, J., March 12, 1934.—We have before us a rule granted, in each of the above numbered cases, on Oscar L. Blough, prosecutor, and Karl E. Richards, district attorney, to show cause:

"(1) Why the evidence obtained by the officers on February 24, 1934, at the home of your petitioner should not be suppressed.

"(2) Why the aforesaid officers, or any of them, should not be restrained from testifying before the grand jury, and in court, as to the evidence found in the home of the defendant as aforesaid on February 24, 1934.

"(3) That the various charges aforesaid against the defendant be dismissed."

The substance of the petition for the rule is that on February 24, 1934, at 2 p. m., an inspector for the State Department of Revenue, accompanied by

four city police officers, entered the private dwelling of the petitioner against her consent and will, without a warrant for her arrest or a warrant to search her residence; that said inspector and officers in the search of her premises found, amongst other things, 22 gallons of whiskey, 2 quarts of gin, and a 50-gallon still, filled, on a gas stove, barrels containing mash, and other evidence of manufacturing whiskey; that she was immediately arrested and charged before an alderman on three separate informations, viz, no. 310, January sessions, 1932, the unlawful manufacture and possession of alcoholic liquor; no. 311, failure to report to the Department of Revenue on a form prescribed by the said department the spirituous liquors in her possession, etc., between November 22, 1933, and December 5, 1933, and neglect and refusal to report and pay tax on liquor manufactured and by her produced; and no. 312, unlawfully offering for sale and selling spirituous liquor in containers not bearing stamps and labels as required by law.

After hearing before the said alderman, the petitioner was held for court to answer all the above charges; and she contends that the said officers made the entry into her home 1831 N. Third Street, without any lawful right so to do.

The answer filed in substance admits most of the facts averred in the petition and avers that the said inspector was authorized under section 12 of the Spirituous and Vinous Liquor Tax Law of December 5, 1933, P. L. 38, to make said inspection, and that the said city policemen were duly authorized to accompany the said inspector in the same; and avers that both the title and the language of the said act of assembly are "large enough to comprehend, include, and make liable persons who are manufacturing but are not privileged of licensed manufacturers."

The contention of the defendant is that the said officers, not having any warrant of arrest or of search and seizure, acted unlawfully, and therefore the evidence they obtained should be suppressed and not admitted at the trial.

The Commonwealth contends that under the Spirituous and Vinous Liquor Tax Law the officers had the right to enter the home of the defendant for the purpose of investigation and procuring payment of the tax, and also that if the said act does not permit the Commonwealth to tax persons illegally manufacturing or possessing spirituous liquor the classification is unjust and the statute is unconstitutional. The said act of assembly, in its title, uses this language: "An act imposing State taxes, payable by those herein defined as manufacturers and importers, on the privilege of manufacturing, selling, or using in this Commonwealth alcohol usable for beverage purposes and certain spirituous and vinous liquors".

In the third section of this act, under the title of "Imposition of Tax", it is provided: " (a) Except as otherwise in this act provided, every manufacturer shall be subject to pay to the Commonwealth of Pennsylvania the taxes imposed in this section for the privilege of producing, manufacturing. . . .

"Provided, however, That the rate of tax on the privilege of manufacturing, producing or distilling in this Commonwealth distilled spirits or wines until January first, one thousand nine hundred thirty-four, shall be. . . .

"Provided however, That until the first day of January, one thousand nine hundred thirty-four, the rate of tax for the privilege of selling or using in this Commonwealth distilled spirits, rectified spirits, or wines produced, manufactured, distilled, rectified or compounded without this Commonwealth, shall be", etc.

And in sections 4, 12, 15, 16, 19, and 20 reference is also made to the privilege, and there is no reference in the act relating to the tax other than the privilege.

It will be noted that, by the title, the tax is imposed on the privilege of manufacturing, selling, etc., of spirituous and vinous liquors. In section 3, the imposition of tax is upon the manufacturer for the privilege of producing, manufacturing, etc., and the rate of tax is on the privilege of manufacturing. There is some variance between the language of the title and the other parts of the act in respect to what is taxable, but we think it is reconcilable and that a fair construction of the language as a whole is that the tax should be paid by the manufacturer for the privilege of producing, manufacturing, etc.

Considering the above-mentioned sections or parts thereof, we can come to no other conclusion than that the legislature intended to tax only the persons who have secured the privilege of producing, manufacturing, etc., spirituous and vinous liquors for beverage purposes. Reports are required from those to whom the privilege is granted. It cannot be said that the legislature expected reports to be made by violators, viz, those who would manufacture and produce or import without a permit so to do. The legislature may have assumed that the law would not be violated. If it in any wise intended to tax those without permits violating the law, on what they produced and manufactured or imported, it would have been an easy matter to have done so. The purpose of the act was that of producing revenue for the State, and to effect the same the said act was passed, thereby giving a privilege to manufacture, produce, etc., and for that privilege exacted a payment of a certain tax. By the Act of December 8, 1933, P. L. 57, amending the Act of February 19, 1926, P. L. 16, in the third section thereof, it is made unlawful for any person without a permit obtained from the Commonwealth to manufacture, produce, etc., any alcoholic liquor, and under section 20 of the said Act of 1926 such violators, upon conviction, shall be guilty of a misdemeanor and be sentenced to pay a fine of not less than $100 nor more than $5,000, or undergo imprisonment of not more than 3 years, or both, at the discretion of the court. By the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, which is entitled: "An act to regulate and restrain the sale, importation, and use of certain alcoholic beverages", in section 610 (p. 34), it is provided that any person who shall sell, attempt to sell, or who shall bring or import, or attempt to bring or import, any liquor into this Commonwealth, except as provided in this act, shall be guilty of a misdemeanor and upon conviction thereof shall be sentenced to suffer a severe penalty.

Because the legislature has thus enacted laws to restrain violations of the several acts of assembly pertaining to the manufacture and sale of spirituous and vinous liquors, we are led to believe that it intended to impose the tax upon those to whom the privilege of manufacturing, producing, selling, or importing had been granted, and that it was not the intention to tax those who were violating the provisions of those statutes.

By the Act of November 22, 1933, P. L. 5, a State floor tax on alcohol for beverage purposes is imposed upon spirituous and vinous liquors lodged or stored in the State at any time between the effective date of this act, viz, November 22, 1933, and the date on which the twenty-first amendment to the Constitution of the United States was ratified, to wit, December 5, 1933; and said tax by section 5 is made due and payable 90 days after the effective date of the act. By section 11, a penalty is imposed for violation, and by section 12 the Department of Revenue is charged with the enforcement of the provisions of the act, and the said department is authorized and empowered to prescribe, adopt, and promulgate and enforce rules and regulations pertaining to the enforcement of the act, viz, taxes to be collected and interest imposed by it, etc.; and it may be that, had the investigation been made under this section by the repre-

sentative of the department and those who were called upon to assist him, they were acting under proper authority. Upon that we are not informed.

At the argument of the case, it was contended that they were acting under the authority of the Spirituous and Vinous Liquor Tax Law, in which we find no authority for such an entry as was made in this case. The word "manufacturing" is defined in the act, but by no principle of law can we find that, as used in the act, it is applicable to anyone other than one to whom a permit is granted.

We are asked by the Commonwealth to say that the representative of the department and the city policemen had authority under the Spirituous and Vinous Liquor Tax Law, supra, to enter and search the home of the defendant without a warrant of arrest or search. This we decline to do.

This court, in the case of Commonwealth v. Kekic, 26 Dauph. 148 (1923), held that searches by police officers in the dwelling house of the owner without a search warrant, seizure of property used in the unlawful manufacture of intoxicating liquor and arrest of owner without a warrant, are violations of the fundamental rights of personal security and private property. The law guards with great care the privacy of the home and, generally speaking, it should not be invaded without a warrant so to do. To enter the privacy of the home there must be clear authority.

But assuming that the officers were not acting under lawful authority and were trespassers ab initio (which we do not decide), we are controlled by the case of Commonwealth v. Dabbierio, 290 Pa. 174, 179 (1927), wherein the Supreme Court said:

"We have not overlooked the decisions of the Supreme Court of the United States upon substantially similar facts; but the 4th and 5th Amendments to the Constitution of the United States, upon which those decisions were based, 'have reference to powers exercised by the government of the United States, and not to those of the states': Ohio ex rel. Lloyd v. Dollison, 194 U. S. 445, 447; National Safe Deposit Co. v. Stead, 232 U. S. 58; Weeks v. United States, 232 U. S. 383. We fully recognize the great persuasive effect to be given to the decisions of that eminent tribunal, even where they are not binding on us; but we find ourselves in more complete accord with what it says in McGuire v. United States, 273 U. S. 95, 99, its latest case having any bearing on the subject,—though there it reaffirms its earlier rulings, above referred to, when exactly the same facts appear,—viz: 'Even if the officers were liable as trespassers ab initio, which we do not decide, we are concerned here not with their liability, but with the interest of the government in securing the benefit of the evidence seized, so far as may be possible without sacrifice of the immunities guaranteed by the 4th and 5th Amendments. A criminal prosecution is more than a game in which the government may be checkmated, and the game lost merely because its officers have not played according to rule. The use by prosecuting officers of evidence illegally acquired by others does not necessarily violate the Constitution, nor affect its admissibility.' "

The result of our opinion is that this evidence may be used to sustain a valid conviction under the Act of 1926, as amended by the Act of December 8, 1933, P. L. 57, supra, but there can be no legal conviction of failure to report and pay tax under the Spirituous and Vinous Liquor Tax Law, supra.

And now, March 12, 1934, upon due consideration, the rule to show cause is sustained and made absolute as to no. 311, January sessions, 1934, viz, the charge of the failure to report and pay a tax, and as to the other charges, nos. 310 and 312, January sessions, 1934, the rule to show cause is discharged.

From Homer L. Kreider, Harrisburg, Pa.